No. 12944

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

MONTANA CONSUMER COUNSEL,
GEOFFREY L. BRAZIER,

Plaintiff and Respondent,

-vs-

PUBLIC SERVICE COMMISSION OF MONTANA
et al.,

Defendants and Respondents,

and

THE MONTANA POWER COMPANY, A Corporation,

Intervenor Defendant and Appellant.

---

Appeal from: District Court of the First Judicial District,
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Robert D. Corette argued, Butte, Montana
Kendrick Smith argued, Butte, Montana
J. J. Burke appeared and Mark A. Clark appeared,
Butte, Montana

For Respondents:

William E. O'Leary argued, Helena, Montana
Russell L. Doty, Helena, Montana
Geoffrey L. Brazier appeared, Helena, Montana
Charles H. Dickman appeared, Helena, Montana

---

Submitted: June 17, 1975

Decided: OCT 17 1975

Filed:

_Thomas J. Kearney_
Clerk

PER CURIAM:

On August 30, 1974, the Montana Public Service Commission by Rate Order #4147 authorized the Montana Power Company to increase its charges for natural gas services to all classes of customers in an amount equal to its increased costs of purchased gas and increased royalties paid to gas producers. Montana Consumer Counsel appealed this order to the district court, Lewis and Clark County, under the provisions of the Montana Administrative Procedure Act. The district court reversed, holding the rate order invalid. The Montana Power Company now appeals from the judgment of the district court.

A brief background will illuminate the issues on appeal and place this controversy in perspective.

In 1972 the Montana Power Company, a public utility, applied to the Public Service Commission, the state regulatory agency, for an increase in rates charged for gas and electric service. A full scale hearing was held before the Commission in which the entire rate structure of the Company was examined. On September 5, 1972, the Commission entered Rate Order #4068 which, insofar as natural gas rates are concerned, provided:

(1) Approval of a 6.6% rate of return, (2) approval of a $2,246,064 increase in net annual earnings, (3) approval of a tax adjustment clause, (4) approval of a "Cost of Purchased Gas Adjustment Clause" authorizing the Company to increase or decrease its charges for natural gas service in an amount equal to any increase or decrease in the cost of purchased gas, subject to review by the Public Service Commission. A system of periodic review and revision of the charges in the approved schedule was provided.

In 1973 the Company filed with the Commission an application for implementation of the "Cost of Purchased Gas Adjustment

- 2 -

Clause" in the 1972 rate order to compensate for increased costs of purchased Canadian gas. A hearing was held before the Commission limited to increases in the cost of purchased Canadian gas since the 1972 rate order pursuant to the "Cost of Purchased Gas Adjustment Clause". The hearing did not include an overall examination of the rate structure of the Company's natural gas operations, nor did it include consideration of gas reserves owned by the Company or cost of service studies of Montana Power Company natural gas operations.

On July 18, 1973 the Commission entered Rate Order #4114 authorizing an increase in charges for natural gas service to industrial contract customers, general service customers, and other contract customers of Montana Power Company and to contract customers and nonresidential customers of the Great Falls Gas Company, all according to a formula based on monthly statements of the Company and quarterly and annual adjustment of various factors in the formula. No increase was authorized in charges to residential customers as it was determined that the need for Canadian gas purchases was created by nonresidential customers who should bear the increased costs.

In 1974 the Company filed an application with the Commission for authority to increase its rates for natural gas service to all classes of its customers on an equal MFC (1000 cubic foot) basis by the amount of increased expense incurred by the Company in the cost of purchased Canadian and Montana natural gas and by the amount of increased royalty expense paid to Canadian and Montana gas producers.

Montana Consumer Counsel filed an appearance and opposed the Company's application throughout. Other appearances were made by the Anaconda Company, Ideal Basic Industries, Inc., Stauffer Chemical Company, the Great Falls Gas Company, Jimmy Shea, and

Walter J. Reisig. A so-called "mini hearing" was held before the Commission limited to increases in the cost of natural gas purchased from Canadian and Montana sources by the Company and increases in royalty payments paid by the Company to Canadian and Montana gas producers. No examination was permitted into the rate structure of the Company's natural gas operations or the rate of return to which the Company was entitled.

On August 30, 1974 the Commission issued Rate Order #4147 providing in material part as follows:

(1) That the Company was not applying for an increase under the "Cost of Purchased Gas Adjustment Clause" in the 1972 rate order, but was applying for an increase in the same amount as the increase in specific expense items, viz. cost of purchased gas and royalty payments.

(2) That for the year commencing July 1, 1974 the projected increases in costs are: (a) Canadian natural gas - at least $8,760,611, (b) Montana natural gas - at least $1,214,547, (c) royalty payments to Canadian producers - at least $1,676,340, (d) royalty payments to Montana producers - at least $336,046 (the total is rounded off to at least $11,988,000 hereafter).

(3) The increased costs are to be borne by all classes of customers on an equal MCF basis.

(4) The actual costs and volumes of gas purchased and royalties paid are to be reported monthly by the Company and billings adjusted accordingly.

(5) That any resulting increase in revenue to the Company will not result in an increase in Company earnings.

(6) That the application for increase by the Company was granted accordingly.

Montana Consumer Counsel appealed rate order #4147 to the district court, Lewis and Clark County. Judicial review was

- 4 -

sought under the provisions of the Montana Administrative Procedure Act. Section 82-4201 et seq., R.C.M. 1947. The Public Service Commission and its members were named as defendants. The Company was permitted to intervene on the side of defendants. Additional testimony and exhibits were received at the district court hearing.

It is important to note that the district court did not rule on the merits of the increased charges to the Company's customers. The district court simply held the rate order invalid because it contained an "automatic adjustment clause" and procedure; a full scale hearing was not held; and "due process" was denied because of constitutional, statutory, and rule violations by the Public Service Commission in proceedings leading to the rate order.

Consumer Counsel contends that the Commission is without power and jurisdiction to issue the 1974 rate order on the basis of a so-called "mini hearing" limited to consideration of four expense items only, namely costs of purchased Canadian gas, costs of purchased Montana gas, Canadian royalty costs, and Montana royalty costs. He maintains that Montana statutes establishing the Commission and providing its powers and duties require a full scale hearing and examination of all revenue and expense accounts of the Company to determine whether the proposed rates and charges are just and reasonable. The substance of his argument, as we understand it, is that the Commission is without power to approve a utility rate increase without conducting a full scale hearing and examination of all factors that affect a fair rate of return for the Company.

The district court's reasoning appears to be similar. Its decision points out that the Commission rate order was not made after examination of all factors which could affect the fair rate

of return to the Company as required by Montana statutes and court decisions; that the 1974 rate order presupposes there has been no change since 1972 in other factors affecting a fair rate of return; and that a rate change can be effective only after a full rate hearing which Consumer Counsel requested but was denied.

In the instant case it is important to note that the Company is not seeking an increased rate of return or increased net annual earnings. The 1972 rate order established 6.6% as a fair and reasonable rate of return and net annual earnings of $7,662,600 to achieve this rate of return. The 1972 rate order was made after a full scale hearing into the general rate structure of the Company and consideration of all factors affecting the Company's rate of return.

In the instant application the Company seeks to "pass through" to its customers the substantial increases it has experienced in specific expense items, namely, the costs of purchased gas and royalties paid to gas producers, commencing July 1, 1974. According to the Company's application, these increased costs are due primarily to the action of the Canadian government in raising prices for gas exported from Canada, which in turn is reflected in corresponding increases in prices the Company must pay for Montana gas, and royalties it must pay to Canadian and Montana producers to insure an adequate supply of gas for its Montana customers. The Company's application indicates an estimated annual increase in these expense items commencing July 1, 1974, of at least $11,988,000 in these items.

The regulation and supervision of public utilities and the rates they charge their customers are legislative functions conferred upon the Montana Public Service Commission by section 70-101 et seq., R.C.M. 1947. The Commission is left to determine

- 6 -

the method and means of exercising these functions within the scope of this delegation of power; the Commission has been granted broad power "to do all things necessary and convenient in the exercise of the powers by this act conferred upon the Commission * * *." Section 70-104, R.C.M. 1947.

A procedure is established for filing "[rate] schedules which shall be open to public inspection." Section 70-113, R.C.M. 1947. Changes in rate schedules are subject to concurrence by the Commission. Great Northern Utilities Co. v. Public Service Commission, 88 Mont. 180, 293 P. 294. When a complaint is filed against utility rates, the Commission is only required "to make such investigation as it may deem necessary." Section 70-119, R.C.M. 1947. Nowhere in the law is the Commission required to exercise more of its powers than it determines appropriate.

In the past the Commission has conducted utility rate adjustment proceedings not involving a hearing and examination encompassing all factors affecting the general rate structure of the utility, for example, the 1973 rate proceedings of the Company, and the 1964 proceedings resulting in a reduction of the Company's rates. Where the agency charged with administration of the law has interpreted Montana law as not requiring it to conduct a full scale investigation and inquiry in every instance, such determination is entitled to great consideration. Bartels v. Miles City, 145 Mont. 116, 399 P.2d 768.

Here the Company did not apply for an increased rate of return or annual net earnings. The Company accepted the 6.6% rate of return and the $7,662,600 annual earnings established by the Commission in its 1972 order. Instead, the Company's application simply sought to maintain this rate of return and annual net earnings by "passing through" to its customers the tremendous increases in the costs of purchased gas and royalty expense. Under

- 7 -

such circumstances, the rate of return and annual net earnings were not germane to the Company's application, and a full scale hearing into factors affecting the rate of return and general rate structure of the Company was beyond the scope of the inquiry before the Commission. The Commission was correct in refusing to expand the hearing into a full scale examination of factors affecting the general rate structure of the Company and the rate of return under the circumstances of the instant case.

We now direct our attention to whether the so-called "automatic adjustment clause" and procedure in the 1974 rate order is illegal.

The 1974 rate order encompasses both present and prospective rate changes. It approves a present increase in utility rates in an amount equal to increased costs of purchased gas and royalties. It also establishes a monthly reporting procedure of actual costs and expenses by the Company and a quarterly reporting of actual volumes or quantities of gas purchased; billings to customers of the Company are then adjusted upward or downward, subject to review by the Commission, in an amount equal to actual increases or decreases in the costs of purchased gas and royalties. These reporting procedures and the resulting adjustment in rates charged to the Company's customers constitute the so-called "automatic adjustment clause" and procedure which Consumer Counsel attacks as illegal.

A majority of states in which the question has been presented has upheld the validity of similar provisions in utility rate orders variously designated as "automatic adjustment clauses", "escalator clauses", "purchased gas adjustment clauses", and "pass through" procedures. These decisions have been made under a wide variety of state utility laws, divers kinds of clauses and procedures, and particular circumstances. Examples of decisions

upholding their validity:  City of Norfolk v. Virginia Electric and Power Company (1955), 197 Va. 505, 90 S.E.2d 140; City of Chicago v. Illinois Commerce Commission (1958), 13 Ill.2d 607, 150 N.E.2d 776; United Gas Corp. v. Mississippi Public Service Commission, (1961), 240 Miss. 405, 127 So.2d 404; City of El Dorado v. Arkansas Public Service Commission (1962), 235 Ark. 812, 362 S.W.2d 680; Maestas v. New Mexico Public Service Commission (1973), 85 N.M. 571, 514 P.2d 847, which includes a compilation of decisions approving the use of such clauses.

In our view the underlying justification for the use of "automatic adjustment clauses" and procedures lies in the realities of the market place.  As the cost of purchased gas and royalty expense of the utility rise or fall, a corresponding increase or decrease in the prices charged its customers must occur.  Otherwise the utility will either be driven out of business or it will reap windfall profits.  Today, in a period of rapid increases in costs of these items to the utility, the former consideration is paramount; at another time, the situation may be reversed and the latter may be the principal concern.  Automatic adjustment clauses and procedures are simply a means whereby rapid fluctuations in these costs to the utility can be reflected in equally rapid and corresponding changes in prices charged the utility's customers.

The "automatic adjustment clause" and procedure in the 1974 rate order provides a continuous reporting procedure of the Company's actual costs and expenses of purchased gas and royalties and the volumes of gas involved; constant surveillance of these items by the Commission; and requires Commission review of any corresponding adjustment of prices charged the Company's customers.  As such, it is a fair and equitable exercise of the supervisory and regulatory powers of the Commission.  We find nothing in this Court's decision in Great Northern Utilities Co. v. Public

Service Commission (1930), 88 Mont. 180, 293 P. 294, or any previous decision of this Court to the contrary.  In fact, Great Northern Utilities Co. is consistent with our decision here.

The final issue in this appeal is whether Consumer Counsel was denied "due process" in proceedings leading to the 1974 rate order.  This issue is somewhat intertwined with the first two issues involved in this appeal and the various contentions of Consumer Counsel in this respect will be discussed here.

The first contention of Consumer Counsel is that he was denied "due process" under federal and state constitutional requirements because the Commission violated certain provisions of the 1972 Montana Constitution, specifically Article II, Sections 8, 9 and 17.  He contends that he and the consumers he represents were denied the guarantees contained therein in proceedings before the Commission leading to the 1974 rate order.

Article II, Section 8, 1972 Montana Constitution provides:

"The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law."

Article II, Section 9, 1972 Montana Constitution provides:

"No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure."

Article II, Section 17, 1972 Montana Constitution provides:

"No person shall be deprived of life, liberty, or property without due process of law."

The gist of Consumer Counsel's argument is that the Commission violated these constitutional requirements when it limited the scope of its hearing to cost of purchased gas and royalty expense adjustments and approved the resulting rate schedule as just and reasonable.

We do not construe these constitutional provisions as prohibiting what was done here. The Company's application for increased prices to offset increases in its cost of purchased gas and royalties, together with its proposed new schedule of prices to all classes of its customers, was filed with the Commission and open for public inspection. The Commission gave notice of hearing on this application by mailing copies of the formal notice to governing officials of all towns served by the Company; by serving notice on all industrial contract customers of the Company; by mailing copies of the notice to the offices of county commissioners of all counties in the state; by publication of the notice in the legal advertising section of all five daily newspapers of general circulation in the state; by disseminating news releases to every radio and television station in the state; and by sending a copy of general news releases to daily and weekly newspapers published in the state.

Consumer Counsel participated in all proceedings throughout and raised no issue of defective notice to the proceedings. In addition to Consumer Counsel, petitions to intervene by the Anaconda Company, Ideal Basic Industries, Inc., and the Stauffer Chemical Company were granted by the Commission. The Commission held a prehearing conference with all parties represented at which time the Company served copies of its exhibits and supporting direct testimony upon all parties in advance of hearing.

In addition to the foregoing, appearances were made at the hearing by Earle E. Garrison on behalf of the Great Falls Gas Company, and by Jimmy Shea of Walkerville and Walter J. Reisig of Billings.

The public hearing was held; thereafter the Commission gave all parties additional time to submit proposed findings of fact, conclusions of law, and briefs; the matter was taken under

advisement by the Commission; and subsequently the rate order was issued on August 30, 1974.

We hold that under these circumstances the public was afforded a reasonable opportunity for citizen participation prior to final decision of the Commission within the meaning of Article II, Section 8, 1972 Montana Constitution; that no person was deprived of the right to examine documents or to observe the deliberations of the Commission within the meaning of Article II, Section 9, 1972 Constitution; and that no person was deprived of his property without due process of law within the meaning of Article II, Section 17, 1972 Montana Constitution.

We do not construe these constitutional provisions as prohibiting the Commission from confining the hearing to issues before it. Here the application sought authority to "pass through" increased gas purchase and royalty costs to the consumer in order to maintain the existing rate of return and annual net earnings previously approved by the Commission after a full scale hearing. As the rate of return and annual net earnings of the Company were not sought to be increased, factors affecting these considerations were not germane. The Commission did not violate constitutional requirements in denying the motion of Consumer Counsel to expand the hearing to encompass these factors under the circumstances of this case.

The second argument of Consumer Counsel is that he was denied "due process" by Commission violation of the Montana Administrative Procedure Act. Section 82-4201 et seq., R.C.M. 1947. The substance of his argument is that the Commission violated the Montana Administrative Procedure Act in failing to rule on Consumer Counsel's proposed findings that the Company did not exercise prudent management in voluntarily renegotiating gas purchase contracts at increased prices. Section 82-4213(1), of the Act provides:

- 12 -

"If, in accordance with agency rules, a party
submitted proposed findings of fact, the decision
shall include a ruling upon each proposed finding."

A similar provision is found in the Federal Administrative Procedure Act. That provision has been construed as not requiring a separate, express ruling on each proposed finding of a party, as long as the agency's decision and order on such party's proposed findings are clear. National Labor Rel. Bd. v. State Center Warehouse & C. S. Co., 193 F.2d 156; American President Lines, Ltd. v. N.L.R.B., 340 F.2d 490. Here the Commission's ruling on Consumer Counsel's proposed findings on prudent management is abundantly clear from its order--they were rejected. This is all that is required under the circumstances here.

The third argument of Consumer Counsel concerns violation of the Commission's own rules of procedure dealing with notice and hearing. The thrust of his argument is insufficiency of the notice of hearing and refusal of the Commission to afford him an opportunity to be heard on all issues involved in violation of Commission Rules 14 and 21.

Consumer Counsel contends, as we understand it, that the notice of hearing is defective in failing to contain "a short and plain statement of the matters asserted" or "a statement of the issues involved". Commission Rule 14, adopting the notice requirements of section 82-4209(2).

Specifically Consumer Counsel contends the notice of hearing confined itself to a proposed increase of $11,988,000 only. This is not a bona fide issue on appeal. Consumer Counsel appeared as a representative of the consuming public, participated in all proceedings before the Commission, raised no issue on the sufficiency of the notice, and cannot now raise this contention as an issue on appeal. The record indicates that Consumer Counsel fully understood the extent of the Company's application for

increases beyond $11,988,000 to offset increased costs, contested such increases at the hearing, and accordingly cannot now contend he was prejudiced by alleged defects in the notice of hearing.

Consumer Counsel further claims that he was denied an opportunity to be heard on all issues in violation of Commission Rule 21. Specifically he argues that the Commission's denial of his motion to expand the hearing into an inquiry into the general rate structure of the Company and its rate of return prohibited inquiry into all issues involved.

Commission Rule 21 in material part provides:

"The presiding officer will insure that all parties are afforded the opportunity to respond and present evidence and argument on all issues involved. Section 82-4209(3)."

For the reasons heretofore stated, neither the Company's rate of return nor its net annual earnings were issues involved in the hearing. Thus the Commission's denial of Consumer Counsel's motion to expand the hearing did not violate Commission Rule 21.

We have noted the other peripheral contentions raised by Consumer Counsel, find them to be without merit, and consider it unnecessary to discuss them in detail in this opinion. We have answered his principal contentions herein with the reasons for our rulings.

In summary we hold that the Public Service Commission was not required to conduct a full scale hearing into the Company's rate of return as a condition precedent to the 1974 rate order under the circumstances of this case; that the so-called "automatic adjustment clause" and procedure contained in the 1974 rate order did not violate Montana law; and that Consumer Counsel was not denied "due process" in Commission proceedings resulting in the 1974 rate order.

The 1974 rate order was valid in all respects, and the judgment of the district court to the contrary is reversed. The

1974 rate order of the Commission is affirmed in all respects.


_____
Chief Justice


_____

_____

_____
Justices