RAILROAD COMMISSION of Texas et al., Appellants,

v.

CITY OF FORT WORTH, Appellee.

No. 12869.

Court of Civil Appeals of Texas, Austin.

Jan. 24, 1979.

Rehearing Denied Feb. 21, 1979.

John L. Hill, Atty. Gen., Joyce Beasley, Asst. Atty. Gen., Austin, for Railroad Commission.

Barry K. Bishop, Clark, Thomas, Winters & Shapiro, Austin, for Lone Star Gas Co.

Arthur R. Petersen, City Atty., Fort Worth, for appellee.

PHILLIPS, Chief Justice.

This is an appeal from an administrative order issued by the Railroad Commission in Gas Utilities Division Docket Number 683 which adjusted the base cost of gas used in calculating Lone Star Gas Company's gate rate.

The trial court remanded the order to the Commission holding it was not supported by substantial evidence. We reverse the judgment of the trial court and render judgment upholding the order.

I.

The principal question before us is whether the trial court erred in holding that the Commission's order in G.U.D. No. 683 was not supported by substantial evidence because it did not conduct a full gate rate proceeding to determine rate of return, rate base and operating expense.

In June, 1975, Lone Star Gas Company received a new gate rate in G.U.D. No. 588 after a full hearing in which all elements of Lone Star's gate rate were examined. These elements included its rate base, rate of return and operating expenses. The gate rate is the rate charged by a transmission company to a distribution company. The 1975 hearing met all the requirements for a full Alvin hearing as set out in *Railroad Commission v. Houston Natural Gas Corp.*, 155 Tex. 502, 289 S.W.2d 559 (1956).

Less than a year later, on March 26, 1976, Lone Star filed an application with the Commission to increase the base cost of gas granted in G.U.D. No. 588. The application was made as a result of rapidly escalating gas prices. That application was docketed as G.U.D. No. 683 and the final decision in that docket is the subject of this appeal.

Thirty Texas cities intervened at the Commission level. Only the City of Fort Worth appealed the Commission's order.

The gate rate fixed in G.U.D. No. 588 was $1.0399 per Mcf including a "spread" of $0.3170 per Mcf. The term "spread" is used for the amount in Lone Star's gate rate which allowed Lone Star to recover its costs, including an 8% rate of return on the fair value rate base. An increase in the base cost of gas would result in an immediate increase in the gate rate and a change in the basic gas cost used in the Purchased Gas Adjustment (PGA) clause authorized in G.U.D. No. 588. The PGA clause provided that rates would be increased or decreased by 85% of the difference between the base cost of gas of $0.7229 and the monthly average weighted cost of gas.

Procedurally, the hearing examiner limited the issue in G.U.D. No. 683 to the proper cost of the new higher priced gas. The rate of return, however, was not reconsidered.

A hearing was conducted on June 14, 1977, to give all parties an opportunity to make their views known on the necessity of conducting a full rate proceeding or limiting the issue in G.U.D. No. 683 to the cost of gas. The City intervenors agreed to consider only the change in the base cost of gas. Although appellee maintains that it

did not so agree, we can find no objection on its part to this limitation.

An evidentiary hearing on gas costs was conducted in November, 1976, and the final order issued July 5, 1977. In this final order the Commission changed the base gate rate for domestic, commercial, company used, and unaccounted for gas to be charged by Lone Star for its delivery of natural gas to all cities, towns, and villages served by Lone Star. This base gate rate, originally set in G.U.D. No. 588, was changed to $1.4883 per Mcf which represents a base cost of gas component of $1.1802 and a spread of $0.3081 pursuant to a voluntary reduction of the spread by Lone Star. This order also amended the purchased gas cost adjustment rule set out in G.U.D. No. 588 in certain respects, and also specified that these rates shall be effective from January 9, 1977. At that time the company was permitted to recover uncollected gas costs, less the $.0089 per Mcf spread reduction. Beginning in January, 1977, it was allowed to recover gas costs through a special five cents ($.05) per Mcf surcharge to be calculated as set out in the order.

Although there was never any serious contest with respect to the reasons for the increased costs of purchased gas, Lone Star introduced testimony relative thereto. As competition for the purchase of gas increased, differences in contract terms arose. Purchasers were required to enter into increased terms on "take-or-pay contracts," price escalation clauses, and required "price redetermination" clauses, thereby involuntarily being required to increase the purchased gas cost. These new contract provisions were necessary to permit the purchaser to acquire large reserves under new gas purchase contracts. As a minimum requirement, any utility must replace production with new reserves each year if it is to maintain its supply base. Replacement rates of less than 100% result in reduced supply, often reduced availability of supplies at the wellhead, curtailment under sales contracts, and the inability to service expanding existing markets or new customers.

Appellants maintain that the Commission's treatment of the change of gas costs in the gate rate had no impact on the rate of return authorized in G.U.D. No. 588. The 588 rate was expressly based upon the weighted average cost of gas purchased by Lone Star in February, 1975, which was 72.29 cents per Mcf. Accordingly, the gate rate established in Docket No. 588 produced a fair rate of return only as long as Lone Star's weighted average cost remained approximately 72.29 cents per Mcf. The Commission recognized the potential problem from the rapidly increasing gas costs and made the following findings and conclusions in Docket No. 588:

"(8). The public interest requires the continuation of a gas cost adjustment rule due to the rapidly spiraling cost of gas and the effect of regulatory lag, since timely relief will benefit both Lone Star and the cities, towns, and villages it serves.

"(9). The city gate rate charge for domestic and commercial usage and unaccounted for gas, as authorized in this Order, should be increased or decreased by eighty-five percent (85%) of the amount by which the weighted average cost of purchased gas during the base period is more or less than 72.29 cents per Mcf, computed to the nearest one-hundredth of one cent (1/100th of 1¢), as herein more fully set forth in Exhibit 'A.'"

The effects are obvious from the provision for an "85% flow-through" of increased purchased gas costs above the "base rate of cost" established by the order in Docket No. 588. If the cost of purchased gas were to remain constant, the flow-through would have no effect. If, however, the cost of purchased gas were to increase significantly, Lone Star would incur an unrecovered expense in the amount of 15% of the difference between the base cost of the purchased gas at the time of the establishment of the gate rate (here, 72.29 cents per Mcf), and the existing weighted average of purchased gas. Assuming that other factors (the fair value rate base, the reasonable rate of return, and other expenses) remain relatively constant, then the utility's rate of return is eroded or decreased by 15% of the increase in the cost of purchased gas. The cost of purchased gas can be determined easily, and, just as easily, segregated from other factors which are to be considered in the establishment of a reasonable rate. In fact, the cost of purchased gas was segregated as an expense component in Docket No. 588.

▪ When the rate, as here, becomes obsolete and inadequate, the utility may seek to establish a new rate through a full gate rate proceeding. This was made clear to all the parties by the Commission as they were fully advised that any of them could request, and obtain, a full gate rate hearing at any time in the future.

On the other hand, if an inadequate rate factor can be identified through an easily segregated expense component, such as the cost of purchased gas, a more limited examination of the rate structure should be permitted in order to avoid the tremendous cost in time and money that the alternative proceeding would involve. *Montana Consumer Counsel v. Public Service Commission*, 168 Mont. 180, 541 P.2d 770 (1975) (per curiam).

▪ Appellee seeks to require Lone Star to reestablish the rate of return that was determined in Docket No. 588. We do not believe this expense should be imposed on the ratepayers. Appellee has the option, however, as pointed out by the hearing examiner, of filing its own complaint with the Commission and insisting upon a separate hearing on the issue of rate of return or any other component of Lone Star's rate.

Using the methodology of the Commission in Docket No. 588, Lone Star produced testimony before the Commission determining the amount of the increase in the base cost of purchased gas necessary to achieve the rate of return on the rate base established in Docket No. 588. Indeed, there was no evidence to the contrary. Consequently, we hold that the change in the rate allowed by the Commission's order was supported by substantial evidence.

The effect of the Commission's order was simply to avoid the erosion of the rate of

return resulting from the loss of unrecovered gas costs in the amount of 15% of the difference between the base cost permitted in Docket No. 588 and the average cost at the time of these proceedings. An agency "is created to centralize expertise in a certain regulatory area and, thus, is to be given a large degree of latitude by the courts in the methods by which it accomplishes its regulatory function." *City of Corpus Christi v. Public Utility Commission,* 572 S.W.2d 290, 297 (Tex.1978).

Appellee contends that all but one of the Commission's seven findings of fact are unsupported by substantial evidence.[1] Fort Worth challenges the findings that: the parties received notice; the Commission determined a gas rate for Lone Star in G.U.D. No. 588; the Commission separated gas costs from other components of the rate in G.U.D. No. 588 by means of a purchased gas adjustment clause; Lone Star agreed to a reduction in the spread; the current weighted average cost of gas was $1.1802 per Mcf; and there was agreement by the parties concerning treatment of out-of-period adjustments.

We hold that the Commission's order, including the findings of fact relative thereto, is supported by substantial evidence. We also hold that the Commission's procedure of adjusting the cost of gas at the gate without a full gate rate hearing was valid and in compliance with the authority vested in it.

## II.

Appellee alleges a number of due process violations by the Commission. We overrule them all.

The final hearing in G.U.D. No. 683 was held on November 10, 1976, but the final order was not issued until July 5, 1977. Appellee contends that the order was void because it violated Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 16(d) (Supp.1978), which provides:

1. Appellee does not challenge finding of fact number one which provides:

   "Lone Star Gas Company's transmission division delivers gas to its distribution systems

"The final decision or order must be rendered within 60 days after the date the hearing is finally closed. . . ."

Section 16(d) was designed to promote the proper, orderly and prompt conduct of business by the agency and is, therefore, directory only. See *Lampasas Federal Savings and Loan Association v. Lewis,* 558 S.W.2d 913 (Tex.Civ.App.1977, no writ); cf. *Lewis v. Jacksonville Building and Loan Association,* 540 S.W.2d 307 (Tex.1976); *Federal Crude Oil Co. v. Yount-Lee Oil Co.,* 122 Tex. 21, 52 S.W.2d 56 (1932).

The Commission's order was entered July 5, 1977, but the rates were made effective January 9, 1977. The intent of the Commission was, as stated in its order, "to approximate as closely as possible the situation that would have resulted had this order been entered on January 9, 1977, and had both the spread reduction and the base cost of gas increase been in effect when January 20, 1977, billings commenced."

Appellee contends that this constituted retroactive ratemaking and, thus, was proscribed by law. See *Railroad Commission v. Houston Natural Gas Corp.,* 155 Tex. 502, 289 S.W.2d 559 (1956); *Amarillo Gas Co. v. City of Amarillo,* 208 S.W. 239 (Tex.Civ. App.1919, no writ). We disagree.

It has been held that "a public utility commission has the power to make its rate order retroactively effective as of any date after it has actually acquired jurisdiction of the cause . . . ." *United Gas Public Service Co. v. State,* 89 S.W.2d 1094, 1104 (Tex.Civ.App.1935, writ ref'd), *aff'd,* 303 U.S. 123, 58 S.Ct. 483, 82 L.Ed. 702 (1938). The strength of this rule was not diminished by the Supreme Court's holding in *Lower Colorado River Authority v. City of San Marcos,* 523 S.W.2d 641 (Tex.1975). In that case rates set in a 1973 L.C.R.A. board meeting were not allowed to take effect as of the time of a 1972 meeting where the earlier meeting's order was void for insuffi-

for sale to domestic and commercial customers in various cities, towns, and villages in Texas."

cient notice. In the present case it is undisputed that the Railroad Commission had jurisdiction of the cause on January 9, 1977.

■ Appellee presents a point concerning ex parte communications between agency officials and parties to the cause. The relevant statute provides:

"Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or their representatives, except on notice and opportunity for all parties to participate. . . ."

Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 17 (Supp.1978). We are unable to locate the communications in controversy in the record before this Court; however, there appears to be no dispute as to the contents of the challenged items.

The communications alleged to be improper were as follows: a letter from the director of the Gas Utilities Division (not the hearing examiner) to a representative of Lone Star concerning procedural rules; a request for continuance by Lone Star; a request for hearing date; a lost exhibit of which the examiner disclaimed consideration; and an amended application by Lone Star that indicated on its face that service was made.

We believe it is clear that the communications either did not concern any issue of fact or law or did not involve any agency member assigned to render a decision or make findings in G.U.D. No. 683. At any rate, no showing of harm has been made. Cf. *Imperial American Resources Fund, Inc. v. Railroad Commission,* 557 S.W.2d 280 (Tex.1977).

■ Appellee contends in his final point that by ordering interest paid on out-of-period adjustments the Commission has given Lone Star an opportunity to improperly manipulate its adjustments. As appellee concedes in its brief, there is no evidence that

such will be done, and we believe the Commission's action was supported by substantial evidence.

We reverse the judgment of the trial court and, herewith, render judgment reinstating the Commission's order.

SHANNON, Justice, concurring.

I concur in the reversal of the judgment of the district court.

The agency's hearing officer was justified in limiting the issue to be determined at the hearing *in the absence of objection by a party to the proceeding.* Appellee City of Fort Worth, as a party to the hearing, had opportunity to voice its objection and to demand a full rate hearing. Fort Worth voiced no objection and made no demand. Had Fort Worth made objection to the limited inquiry and made demand for full hearing, the hearing officer would have conducted such a hearing. By remaining silent, Fort Worth waived its right to require a full hearing before the agency and, of course, it should not be heard to complain of the limited inquiry in its administrative appeal to the district court of Travis County.