630 P.2d 133

J. R. SIMPLOT COMPANY, Appellant,

v.

INTERMOUNTAIN GAS COMPANY and Idaho Public Utilities Commission, Respondents.

BEKER INDUSTRIES CORP., Appellant,

v.

INTERMOUNTAIN GAS COMPANY and Idaho Public Utilities Commission, Respondents.

In the Matter of the Application of INTERMOUNTAIN GAS COMPANY FOR AUTHORITY TO INCREASE ITS RATES EFFECTIVE OCTOBER 1, 1978.

Nos. 13184, 13186.

Supreme Court of Idaho.

June 9, 1981.

Robert J. Ennis and Thomas A. Miller, of Hawley, Troxell, Ennis & Hawley, Boise, for appellant J. R. Simplot Co.

Larry D. Ripley, of Elam, Burke, Evans, Boyd & Koontz, Boise, for appellant Beker Industries.

Tom Ambrose, of Moffatt, Thomas, Barrett & Blanton, Boise, for respondent Intermountain Gas Co.

John J. McMahon, Deputy Atty. Gen., Boise, for respondent Idaho Public Utilities Commission.

BAKES, Chief Justice.

On August 31, 1978, Intermountain Gas Co. filed a "tracker" application with the Idaho Public Utilities Commission requesting authority to raise rates in order to pass through an impending increase in the cost of natural gas. The new rate was to take effect on October 1, 1978. On September 25, 1978, an abbreviated hearing was held, and an order approving a uniform 1.191 cents per therm increase was entered on

342

September 29, 1978. Nine days prior to the approval of the tracker application, the commission had also entered an order authorizing a uniform general rate increase of 3.1% to all customers of Intermountain Gas, pursuant to a prior application. J. R. Simplot Company and Beker Industries have appealed both orders; however, this appeal is concerned only with the tracker increase. The appeals of Simplot and Beker as to the tracker increase have been consolidated.

The alleged errors are twofold. First, the appellants assert that the commission erred by failing to determine Intermountain's total revenues, expenses, appropriate rate base and rate of return, as impacted by the tracker increase. In essence they ask for a hearing with all the accoutrements of a general rate proceeding. Second, it is claimed that the authorized increase on a uniform cents-per-therm basis was arbitrary and capricious, because it was completely inconsistent with the uniform percentage general rate increase authorized nine days earlier. It is argued that a uniform per-therm basis yields a non-uniform increase of from 5.3% to 3.4%, with high volume users bearing the greatest percentage increase.

■ As to the first issue, Intermountain Gas simply seeks to maintain its authorized rate of return by passing through to its customers the increased cost of natural gas. Where, as in this case, a utility has no control over substantially increased costs, a pass-through rate increase to cover the additional costs will not impact the authorized rate of return. In such situations, the common utility regulation practice is to permit a scaled down proceeding focusing only on the particular increase. *California Manufacturers Ass'n v. P.U.C.*, 24 Cal.3d 251, 155 Cal.Rptr. 664, 667, 595 P.2d 98, 101 (1979); *Montana Consumer Council v. Public Service Comm'n*, 168 Mont. 180, 541 P.2d 770, 774 (1975); *Railroad Comm'n v. City of Fort Worth*, 576 S.W.2d 899, 902 (Tex.Civ. App. 1979). "Little purpose is served by requiring the commission to hold a general rate proceeding, recalculating all expenses, revenues, rate base, and rate of return,

when the only substantial issues are extraordinary changes in fuel costs ...." *California Manufacturers Ass'n v. P.U.C., supra.* With a view to constitutional considerations, it is clear that within the regulatory context, due process is a flexible concept permitting expert administrative agencies broad latitude to adapt procedures to the specific regulatory needs of their jurisdictions. *City of Los Angeles v. Public Utilities Comm'n*, 15 Cal.3d 680, 125 Cal. Rptr. 779, 791, 542 P.2d 1371, 1383 (1975); *see Federal Power Comm'n v. Pipeline Company*, 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037 (1941). Consequently, we find that the commission addressed all the issues pertinent to the "tracker" application and that the commission acted properly in conducting an abbreviated proceeding on this matter.

■ We also sustain the commission's uniform cents-per-therm increase in rates. The appellants contend that the uniform cents-per-therm increase in rates is arbitrary because it creates a non-uniform percentage increase. However, that argument does not go to the point. Where per therm rates are non-uniform in the first instance, as is the case here, a uniform cents-per-therm increase will always create a percentage variation in rates. Thus, the focus must be upon the reasons behind the uniform cents-per-therm increase, and not merely upon its mathematical manifestations.

The commission stated that "[t]hese increases [in the cost of gas] have historically been tracked through by increasing the commodity charges, but not the demand charges of gas sold to applicant's customers ...." The commission also concluded that "[t]he rate increase granted will compensate the applicant only for increases in the costs of purchased gas and therefore this commission will not require a cost of service study before allowing applicant to put the increased rates into effect."

Where the objective of the commission, as in this case, is only to pass through the increased cost of gas, it is not unreasonable or arbitrary to require each customer to pay

for the increased cost of the gas which it uses. If the utility must pay an increase of 1.191 cents per therm for each therm purchased, then each customer may reasonably be required to pay an increase of 1.191 cents per therm for each therm that it uses. As recognized by the commission, other factors involved in the cost of service which support variable rates are not affected and need not be examined. If, however, the commission has other objectives, such as conservation of fuel, which it wishes to consider in addition to merely passing through the cost of gas, more extensive hearings and findings concerning the allocation of the rate increase may be necessary. *See California Manufacturers Ass'n v. PUC, supra.*

Under the facts of this case, we find no error in the commission's conclusion that "the [uniform 1.191 cents per therm] rate increase granted is fair, reasonable and nondiscriminatory and will compensate the applicant only for increases in the costs of purchased gas ...." The order of the commission is affirmed.

McFADDEN, DONALDSON and BIST-LINE, JJ., concur.

SHEPARD, Justice, dissenting.

This case has passed through the alimentary canal of the Court as precipitously and with as little consideration and thought as it was "passed through" the Commission. The result is therefore not surprising.

I do not disagree with the Court's disposition of appellant's first argument, *i. e.,* that it was entitled to a full rate hearing and that Intermountain Gas Company, because of the lack of record, could be assumed to be obtaining an exorbitant rate of return. Such a full rate hearing testing Intermountain's need for additional revenue had just been concluded. The Commission had concluded that Intermountain was entitled to additional revenue and had ordered an increase in rates to provide that necessary revenue. I cannot really believe that those first assertions of Simplot were seriously advanced.

Rather, the Court again today faces not the question of the entitlement of a utility to additional revenue, but rather upon which class of consumer additional rates would be placed to generate the needed revenue. I merely make reference to *Grindstone Butte Mutual Canal Co. v. Idaho Public Utilities Commission,* 102 Idaho 175, 627 P.2d 804 (1981) (Shepard, J. dissenting), and note that the Court's opinion of today is even more cursory and less analytical than *Grindstone, supra.*

It is clear that the Commission in the instant case merely took note of an increased cost of the utility, to-wit: an increase in the cost of natural gas delivered to Intermountain. That increase is not really contested nor is the fact that the company needs additional revenue to meet said increased expense. What is at issue is the order of the Commission arbitrarily increasing the rate for all consumers by 1.191 cents per therm. As I view the record, the sole rationale for such uniform increase cost per therm for all customers was: "by adjusting rates so as to allow applicant [Intermountain] to recover its own increased costs dollar for dollar, we do not in any way affect its earnings." Regardless of how simplistic such approach might appear, I might agree that it is reasonable insofar as it relates to *Intermountain's need for revenue to assure it a fair rate of return.* What it bears no relation to whatsoever is the remaining question raised by appellant as to *how that need for additional revenue to Intermountain shall be apportioned among its consumers.*

Appellant points out that only nine days prior to the conclusion of the instant proceedings the Commission had concluded a general full scale rate hearing and had therein ordered an increase in rates for the customers of Intermountain. The rates of the customers of Intermountain were uniformly increased by a *percentage* of 3.1 per cent. However, what is more important are those orders of the Commission which continued a differential in rates per therm costs as between the various consumer classes. Those increased rates are now on

appeal to this Court. Nevertheless, we must assume that the Commission ordered such differential in rates, and will contend upon appeal that they are justified, *on some basis*. That basis can only be an assertion that the costs per therm to a large industrial user such as the appellant is justified in that the cost of service to it is less to the utility than to other classes of consumers.

The simplistically attractive increase per therm made uniform to all customers in the tracker situation simply cannot be squared with the assertion often put forward by the Commission before this Court that a utility may not charge any class of customer any rate the utility desires, but that it must bear some fair relationship to the cost of service to that class or individual customers so as to avoid the statutory proscription against preferential or discriminatory rates.

The appellant here complained below and complains here that the said increase granted by the Commission as applied to its class is discriminatory and bears no relationship to the costs of service to its class. A major complaint of the appellant is that it requested the Commission to require a cost of service study prior to instituting the uniform per therm rate increase. That request was denied and the majority opinion does not even condescend to mention such contention of the appellant.

If there is any fact, logic or reasonableness in differential rates per therm for various classes of the utility's customers, there can be no support for the Commission's action in the instant case granting a uniform cost per therm increase across the board to all of the utility's customers.

While a cost of service study undoubtedly is not as appealing to either the Commission or the utility as the instant truncated proceeding, I would believe nevertheless it would not involve all of what the majority has termed the "accoutrements" of a full scale rate hearing. In the instant proceeding, consideration of all the elements of the company's costs, expenses and rate base had been concluded only nine days earlier. I cannot but believe that many of the matters relating to cost of service in the just concluded proceeding could have been applicable to the instant proceedings. Although the appellant urged below that the record of the earlier proceedings should and could be considered in that regard, the Commission refused to do so.

In the instant proceeding, while the increases in rates may appear relatively minor, when applied to enormously large consumptive customers they may be highly significant. What is more important, however, in my mind, is the arbitrariness of the process and its result, which this Court stamps with its approval. In its proceedings concluded nine days before the instant proceedings the Commission, following a full scale rate hearing, increased the then existing rates of all customers by a uniform 3.1 per cent. Some nine days later the Commission increased all customers by a uniform 1.191 cent per therm, which increased large industrial users by 5.3 per cent as compared with a 3.4 per cent increase for residential rates. In my opinion, clearly one or the other of those actions of the Commission was erroneous.

Analysis of the authorities cited by the majority opinion indicate to me, at least, no support for the majority's disposition of this matter. In *Federal Power Commission v. Natural Gas Pipeline Co.*, 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1942), the Court had for consideration the contention of certain utilities that the Federal Power Commission had deprived the utilities of their property by refusing to permit them to earn a fair rate of return. Clearly, a full generalized rate hearing had been held and the dispute, both in the state and federal administrative proceedings and on appeal, was between the utilities and the regulatory agency regarding the rates which the utilities would be allowed to charge their customers. The case is obviously a far cry from today's considerations regarding which customers must bear the burden of generating additional revenue to meet an admitted financial need of the utility. It is true that the court stated that the "rate-making bodies [are not bound] to the service of any single formula or combination

of formulas." *Id.* at 586, 62 S.Ct. at 743. However, the court also stated that

> "[o]nce a *fair hearing* has been given, proper findings made and other statutory requirements satisfied, the courts cannot intervene in the absence of a clear showing that the limits of due process have been overstepped. If the Commission's order, as applied to the facts before it and viewed in its entirety, *produces no arbitrary result*, our inquiry is at an end." *Id.* (Emphasis added.)

Today's case is, in my judgment, productive of an arbitrary result.

Likewise, in the case of *Montana Consumer Counsel v. Public Service Commission*, 168 Mont. 180, 541 P.2d 770 (1975), the question I deem presented in the instant case was not presented to the Montana Court. There were substantial similarities to the case at bar. An increase in the cost of natural gas impelled the utility to apply for and the Commission to grant an increase in rates on a pass through basis to insulate the utility from an otherwise erosion of a fair rate of return. Similarly, the authorized increases were "to be borne by all classes of customers on an equal MCF basis." *Id.*, 541 P.2d at 773. Similarly, as stated by the Court, "the substance of his argument [Consumer Counsel] as we understand it, is that the Commission is without power to approve a utility rate increase without conducting a full scale hearing and examination of *all factors* that affect a fair rate of return for the Company." *Id.* (Emphasis added.) There the Court held that the Commission was correct in denying the Consumer Counsel's request for a full scale hearing involving all factors that might effect a fair rate of return to the company. In today's case this Court has likewise determined that appellants were not entitled to such a full scale hearing relating to the fair rate of return for the utility. With that conclusion I have agreed. However, the Montana Court did not in its opinion consider or deal with the question I deem presented in today's case, *i. e.*, the allocation among the various classes of customers of the burden of increased rates to raise the revenue admittedly necessary to permit the utility to obtain a fair rate of return.

*Railroad Commission v. City of Fort Worth*, 576 S.W.2d 899 (Tex.Civ.App.1979), contains some similarities to the instant case, but also there are many differences. There, as here, the utility had just concluded a full scale rate increase application followed by rapidly escalating gas prices and had applied for an additional increase. The question was only the "*base* gate rate" increase charged to cities, towns and villages. That rate was established by an "85 per cent flow through" of the utility's increased gas costs. The only question, as I view the opinion, was whether the utility was entitled to such an increase. As I view it, no question was raised as to whether the consumer could be held to bear the burden, vis a vis other customers, of generating additional revenue for the utility. The court noted that a full gate rate proceeding was available to the parties and indeed in the concurring opinion it is noted that

> "[a]ppellee City of Fort Worth, as a party to the hearing, had opportunity to voice its objection and to demand a full rate hearing. Fort Worth voiced no objection and made no demand. Had Fort Worth made objection to the limited inquiry and made demand for full hearing, the hearing officer would have conducted such a hearing. By remaining silent, Fort Worth waived its right to require a full hearing before the agency * * *." *Id.* at 904 (Shannon, J. concurring).

Such is in stark contrast to the opinion of the court in the case at bar.

It is, however, *California Manufacturers Association v. Public Utilities Commission*, 24 Cal.3d 251, 155 Cal.Rptr. 664, 595 P.2d 98 (Cal.1979), which provides the most interesting sidelight to the case at bar. In *California Manufacturers, supra*, the utility sought increased rates to offset their increased costs of natural gas. As stated by the Court, "[t]he utilities' right to rate increases in the total amounts granted is not challenged." *Id.* 155 Cal.Rptr. at 665, 595 P.2d at 99. Just as in the instant case, in

*California Manufacturers, supra*, the petitioners challenged the method of allocating those increases among utility users. The utilities had proposed a uniform cents per therm basis of increase. However, the Commission considered six different methods of spreading the increased costs among the users, held what would appear to be extensive hearings thereon, and concluded that a complex rate design should be established with differing rates for different classes of consumers based largely on the need for conservation. Following petitions for rehearing, even those decisions of the Commission were modified within the residential class.

In *California Manufacturers, supra*, the Court did approve of the Commission's use of somewhat abbreviated or so-called offset proceedings. However, the Court I believe made its position clear when it said that "[l]ittle purpose is served by requiring the commission to hold a general rate proceeding, recalculating all expenses, revenues, rate base, and rate of return, when the only substantial issues are extraordinary changes in fuel costs *and method of apportionment of the increase in the revenue requirement to customers.*" *Id.* 155 Cal. Rptr. at 667, 595 P.2d at 101 (Emphasis added.)

In *California Manufacturers, supra*, the Commission in its offset proceedings had obviously given consideration to and taken testimony regarding factors such as the need for conservation, the cost of service, the necessity for a rate structure differing from class to class and the prospective shortage of natural gas. In contrast, the Commission in the instant case, insofar as the record demonstrates, gave no consideration whatsoever to any factor in allocating the revenue need beyond a uniform increase in rate per therm to all users. As noted by the California Court,

> "[a]s we have seen, a utility's revenue requirement is determined by its costs, rate base, and rate of return. In allocating the revenue requirement among several groups of gas users, it is obvious that if an increase is made in the revenue

requirement from one, a decrease necessarily follows in the revenue requirement allocable to others. * * * Having discretion to consider factors other than cost, the commission must necessarily create some disparity among users. Whether such disparity reaches the plateau of arbitrary or discriminatory action can only be determined upon a more adequate record and sufficient findings following remand." *Id.* 155 Cal.Rptr. at 668, 595 P.2d at 102–03.

Hence, the decision of the Commission was reversed, the Commission was directed to hold further hearings on the appropriate method to spread the utility's rate increase and was ordered to enter an order setting such an appropriate rate spread.

In my judgment, the decision of the Commission in the instant case is arbitrary. The Commission denied the appellant's request that cost of service be considered in the allocation of rate increases among the consumers. While this and other courts have held that cost of service is not the *sole* factor to be considered, I know of no decision of this or any other court which states that cost of service is an inappropriate factor and may be excluded entirely. In my judgment, there is a total lack of any support in the findings and conclusions of the Commission for its decision. I would set aside the order of the Commission and remand the cause for further proceedings.