PEOPLES NATURAL GAS COMPANY, DIVISION OF INTERNORTH, INC., Appellee,

v.

IOWA STATE COMMERCE COMMISSION, Appellant,

and

Office of Consumer Advocate, Intervenor-Appellant.

No. 85–750.

Supreme Court of Iowa.

Feb. 19, 1986.

Philip E. Stoffregen, Gen. Counsel, Patrick J. Nugent, Deputy Counsel, and Daniel J. Hanson, Asst. Gen. Counsel, for appellant.

James R. Maret and William A. Haas, Des Moines, for intervenor-appellant.

Penelope B. Tvrdik, Council Bluffs, for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, CARTER and WOLLE, JJ.

CARTER, Justice.

The Iowa State Commerce Commission (the commission) and the Office of Consumer Advocate (the consumer advocate) appeal from orders of the district court which interpret Iowa Code section 476.6(7) (1983) to require a contested case hearing procedure for reconciliation of automatic pass-through adjustments to the gas cost component of utility rate structures. Because we disagree with the district court's interpretation of the applicable statutes, we reverse its orders and remand the action to the district court for further proceedings.

The issues involved in the present appeal all relate to the procedures to be employed in the application of the automatic adjustments of charges permitted utilities under Iowa Code section 476.6(11). The adjustments involved in the present case relate to pass-through adjustments of the gas cost component of the rate structure of Peoples Natural Gas Company (Peoples), the appellee herein. A gas utility's rates consist of two components: (1) a gas cost component, and (2) a component consisting of operating costs and profits. The latter component must be established through the general rate case process and contested case procedure specified in Iowa Code section 476.6(7). The gas cost component is determined through an annual mechanism called a "purchased gas adjustment" or "PGA." *See* 250 Iowa Admin.Code § 19.10.

The primary issue presented on this appeal is whether, in connection with the annual reconciliation of the automatic PGA pass-through, a contested case hearing procedure is required when disagreements arise between the utility and the commission with respect to that reconciliation and its effect upon the rate structure for the next twelve-month period. Subsection (7) of section 476.6 requires that a contested case hearing procedure be employed with respect to "an application for new or changed rates." The district court interpreted the PGA automatic adjustment procedure specified in subsection (11) of section 476.6 as an "application for new or changed rates" as that term is specified in subsection (7) of that statute.

The commission and the consumer advocate challenge this ruling on this appeal. They urge that the automatic PGA is not an application for new or changed rates so as to trigger the hearing requirements of subsection (7). In addition, they urge that no other statute, agency rule, or constitutional mandate requires the utilization of a contested case hearing procedure to resolve disagreements between the commission and the utility concerning quantitative determinations arising in the PGA reconciliation. The commission and the consumer advocate urge that when such disagreements arise they may be finally resolved at the agency level based entirely upon the documents required to be filed by the utility under 250 Iowa Admin.Code § 19.10. In addition, they urge that, because judicial review of agency action is available to the utility

under Iowa Code section 17A.19(8), the utility's due process rights are not violated. Peoples responds to these arguments by asserting that the district court correctly found that a contested case hearing was required under section 476.6(7) and, in the alternative, that failure to afford such a hearing in the present case to resolve the differences of the parties is a denial of due process.

**I. Whether Subsection (7) of Section 476.6 Requires that Differences Between a Utility and the Commission Concerning PGA Reconciliations Must be Settled by Contested Case Hearing Procedures.**

The first issue which we must determine is whether the district court was correct in interpreting subsection (7) of section 476.6 as requiring that a contested case hearing procedure be invoked to settle differences between a utility and the commission over proposed PGA reconciliations. The district court's determination that such procedures are mandatory was the result of its conclusion that the automatic PGA adjustment of charges authorized under subsection (11) of the statute constituted "an application for new or changed rates" within the contemplation of the formal hearing requirements established in subsection (7) of the statute. The commission and the consumer advocate vigorously assert that rather than being subsection (7) rate applications, PGA reconciliations are the complete antithesis thereof. Support for the appellants' contention is found in the following discussion contained in *J.R. Simplot Co. v. Intermountain Gas Co.*, 102 Idaho 341, 630 P.2d 133, 134 (1981):

> As to the first issue, Intermountain Gas simply seeks to maintain its authorized rate of return by passing through to its customers the increased cost of natural gas. Where, as in this case, a utility has no control over substantially increased costs, a pass-through rate increase to cover the additional costs will not impact the authorized rate of return. In such situations, the common utility regulation practice is to permit a scaled down proceeding focusing only on the particular increase. *California Manu-*

*facturers Ass'n v. P.U.C.*, 24 Cal.3d 251, 155 Cal.Rptr. 664, 667, 595 P.2d 98, 101 (1979); *Montana Consumer Council v. Public Service Comm'n*, 168 Mont. 180, 541 P.2d 770, 774 (1975); *Railroad Comm'n v. City of Fort Worth*, 576 S.W.2d 899, 902 (Tex.Civ.App.1979). "Little purpose is served by requiring the commission to hold a general rate proceeding, recalculating all expenses, revenues, rate base, and rate of return, when the only substantial issues are extraordinary changes in fuel costs...." *California Manufacturers Ass'n v. P.U.C., supra*. With a view to constitutional considerations, it is clear that within the regulatory context, due process is a flexible concept permitting expert administrative agencies broad latitude to adapt procedures to the specific regulatory needs of their jurisdictions. *City of Los Angeles v. Public Utilities Comm'n*, 15 Cal.3d 680, 125 Cal.Rptr. 779, 791, 542 P.2d 1371, 1383 (1975); *see Federal Power Comm'n v. Pipeline Company*, 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037 (1941). Consequently, we find that the commission addressed all the issues pertinent to the "tracker" application and that the commission acted properly in conducting an abbreviated proceeding on this matter.

As indicated in the discussion of the Idaho court, the primary purpose of PGA reconciliations is to avoid the necessity of formal rate hearings and allow the utility a pass-through of fuel cost increases. Recognition of this principle is more fully developed in *Associated Gas Distributors v. Federal Energy Regulatory Commission*, 706 F.2d 344, 345–46 (D.C. Cir.1983) where the court states:

> In the early 1970's, long before the passage of the NGPA, it became apparent that the lengthy and complicated procedures of full-scale section 4 review were not the most efficient method of handling the growing volume of rate increase filings. Accordingly, in 1972, the Commission created a streamlined alternative—the PGA proceeding—which al-

lows a pipeline to facilitate recovery of costs by including a purchased gas cost adjustment clause in the rates it files with the Commission. *See* 18 C.F.R. § 154.38(d)(4) (1982). The stated purpose of this time-saving proceeding was to prevent rate increase filings from becoming "pancaked," *i.e.,* piled up on top of one another such that new ones were filed before the old ones were approved. *Accord, California Manufacturers Association v. Public Utilities Commission,* 24 Cal.3d 251, 256, 595 P.2d 98, 101, 155 Cal. Rptr. 664, 667 (1979); *National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission,* 81 Pa. Cmwlth. 148, 473 A.2d 1109, 1120–21 (1984).

■ Based upon those considerations which favor the utilization of automatic pass-through adjustment of charges, we agree with the contention of the commission and consumer advocate that it was not the intention of the legislature to embrace automatic adjustment procedures authorized by subsection (11) of section 476.6 within the hearing requirements contained in subsection (7) of that statute. Further support for this view is to be found in the fact that the provisions which are now contained in subsection (11) were, when originally enacted, located in a different section of the Code than subsection (7), which contained no reference to formal hearing procedures. We hold that the district court erred in determining that the hearing requirements of subsection (7) apply to disputes over PGA reconciliation.

**II. Whether a Hearing is Required Under Iowa Code Section 17A.2(2).**

■ We next consider whether the definitional statute defining "contested case" under the Iowa Administrative Procedure Act affords any basis for the district court's determination that a contested hearing was required to resolve differences between the commission and the utility concerning the proposed PGA reconciliation. Section 17A.2(2) provides:

> "*Contested case*" means a proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing.

In order to qualify the present dispute as a "contested case" under the foregoing definition, Peoples must point to some statutory or constitutional requirement which mandates an evidentiary hearing. For reasons stated in the the preceding division, we find no such statutory requirement in section 476.6. Peoples does not suggest any other statutory provision which mandates that a contested case hearing be held, but it does suggest that the failure to require a hearing would violate its due process rights. This argument is primarily based upon its contention that the dispute which it has with the commission over its proposed PGA reconciliation involves issues of fact which cannot be fairly resolved in the absence of an evidentiary hearing. For reasons which will subsequently appear, we disagree with this contention.

The issue in dispute in the present action concerns the proposed 1984 PGA reconciliation filed by Peoples on or about October 1, 1984, to be effective November 1, 1984. In the matters filed with the commission with respect to that proposed reconciliation, Peoples sought to recapture an under recovery of $439,029 from general service town plant customers for the period between September 1, 1982, and August 31, 1983. The commission refused to permit recapture of these costs during the ensuing twelve-month period because of Peoples' failure to include this information in the PGA reconciliation filed for the previous year. Peoples sought reconsideration of the commission's ruling on this issue in a petition for rehearing filed in compliance with the commission's rules. That petition was summarily denied by the commission on the basis of the documentation which had been furnished in connection with the original PGA reconciliation and the petition for reconsideration.

In its attempt to show that a factual dispute exists which requires an evidentiary hearing, Peoples disputes the commission's determination that (a) the proposed PGA adjustment should have been made prospectively and not retrospectively; (b) the proposed PGA adjustment arose from a change in Peoples' methodology for assigning costs; and (c) in failing to seek recapture of these costs in its prior year's PGA reconciliation, Peoples failed to collect the short-fall by its own choice. We believe that in its efforts to convert the foregoing issues into factual disputes Peoples is exalting form over substance. It has documented in its filings with the commission exactly what occurred in regard to the $439,029 short-fall and exactly how it proposes to recapture same.

Regardless of how the commission's findings and conclusions are labeled, there is nothing to indicate that they were arrived at as a result of disbelieving or failing to accept Peoples' version of the facts. It is readily apparent in comparing the documentation supplied by Peoples with the rationale employed by the commission in denying the proposed short-fall recapture in the 1984 PGA adjustment that such denial was the result of the commission's belief with respect to controlling principles of law. Peoples was accorded, under the commission's rehearing rules, an opportunity to fully challenge the legal conclusions which led to the denial of the proposed recapture. Because the primary issue was one of law and not of fact, a contested case hearing was not necessary. *See Zachary v. Federal Energy Regulatory Commission*, 621 F.2d 155, 158 (5th Cir.1980); *Allegheny-Ludlum Steel Corp. v. Pennsylvania Public Utility Commission*, 501 Pa. 71, 459 A.2d 1218, 1220–21 (1983).

**III. Whether a Contested Case Hearing is Required in Order to Satisfy Due Process.**

■ We next consider Peoples' argument that the failure of the commission to afford it a hearing on its proposed PGA reconciliation constituted a denial of due process of law. We considered a similar issue in *Allegre v. Iowa State Board of Regents*, 349 N.W.2d 112, 115–16 (Iowa 1984). We determined in that decision that due process does not require an evidentiary hearing with respect to controversies "in which there is no relevant factual dispute between the agency and the party." *Id.* at 116 (quoting Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 330 (1977)). Based upon those considerations discussed in the preceding division of this opinion, we find that this is such a case. We also note in regard to Peoples' due process claim that the failure to hold an administrative hearing does not preclude the utility from seeking judicial review of the final agency action pursuant to Iowa Code section 17A.19(1).

In its petition for judicial review filed in the district court, Peoples coupled its challenge to the agency's refusal to afford it a hearing with a direct challenge to the merits of its order pursuant to section 17A.19(1). In view of the position which the district court took on the failure to afford a hearing, it did not deem it necessary to consider the legality of the commission's order on the merits. Because we find that the court erred in its determination that an evidentiary hearing was required, we reverse the judgment of the district court and remand this matter to that court for consideration of the remaining issues presented in Peoples' petition for judicial review.

Because the stay order previously entered in this action by the district court fails to comply in several respects with our decision in *Teleconnect Co. v. Iowa State Commerce Commission*, 366 N.W.2d 511, 513–14 (Iowa 1985), we direct that that order shall cease to be effective upon issuance of the procedendo from this court.

REVERSED AND REMANDED.