CHEROKEE COUNTY ELECTRIC
COOPERATIVE ASSOCIATION,
Appellant,

v.

PUBLIC UTILITY COMMISSION OF
TEXAS, et al., Appellees.

No. 13325.

Court of Civil Appeals of Texas,
Austin.

June 10, 1981.

Rehearing Denied July 8, 1981.

Robert Campbell McGinnis, McGinnis, Lochridge & Kilgore, Austin, for appellant.

Mark White, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, for Public Utility Commission.

Frank Cain, Cain & Magee, Dallas, for intervenor, Southwestern Elec. Service Co.

SHANNON, Justice.

Appellant, Cherokee County Electric Cooperative Association, filed an administrative appeal in the district court of Travis County from an order of the Public Utility Commission authorizing appellee Southwestern Electric Service Company to invoke a purchased power adjustment clause. Southwestern Electric Service Company filed a petition in intervention in the administrative appeal. After hearing, the district court entered judgment sustaining the administrative order. This Court will affirm the judgment of the district court.

Southwestern Electric Service Company is an electric utility serving some thirty-three thousand customers in eleven counties and twenty-three cities in central and east Texas. It generates no electricity itself,

but instead distributes electric power purchased from Texas Power and Light Company. Appellant Cherokee County Electric Cooperative, in turn, buys its electric power wholesale from Southwestern Electric Service Company for resale to Cherokee's retail consumers. For a number of years Southwestern Electric Service Company's wholesale price to Rural Electric Association (REA) customers, such as appellant, was cheaper than its price to its own direct retail customers. This arrangement was made possible by a long-standing agreement between Texas Power and Light Company and Southwestern Electric Service Company providing a cheaper price to Southwestern for power resold by it to REA customers wholesale.

■■■ In July, 1977, Southwestern Electric Service Company obtained from the Public Utility Commission a purchased power adjustment clause as a part of a general order increasing rates in Docket No. 318. A purchased power adjustment clause is an escalator mechanism devised by utility regulators to deal with rapid fluctuations in the cost of power. Such a clause operates to increase or decrease the revenue of the utility by the sum of its increased or decreased costs of power charged the utility by its supplier. *City of Norfolk v. Virginia Elect. & Power Co.,* 197 Va. 505, 90 S.E.2d 140 (1955). In case of a 100 percent purchased power adjustment clause, the electric consumers are required ultimately to pay the total increase in the cost of power from the supplier, if an increase occurs, and they are given the benefit of a total decrease in such cost when a decrease occurs. Such clauses allow adjustment in the revenue of the utility in case of fluctuations in the cost of power without the necessity for a full-scale rate hearing each time the cost of power from the supplier increases or decreases.

The Commission's authorization for the purchased power adjustment is set out in the following paragraph which appears in the order entered in Docket No. 318:

"The applicant shall be permitted to file a purchased power adjustment clause to its tariff as set out in Finding of Fact No. 21 and as amended in paragraph 2, above. The clause shall not be construed to be an automatic adjustment clause but under future Commission or Federal Power Commission orders regrading the wholesale rates charged to Applicant it shall be permitted to file information with the Commission reflecting additional proposed charges to its customers sufficient to compensate it for the increased wholesale rates approved by the Commission. The proposed additional charges shall be reviewed by the Commission and shall be subject to full public hearing upon the Commission's own motion. The purchased power adjustment factor as approved by the Commission shall be billed separately by the Applicant until it applies for another change in rates."

The purchased power adjustment clause filed by Southwestern in response to the Commission's authorization is as follows:

"*APPLICATION*: To be applied equally to all rate schedules for the time interval between approval of the Public Utility Commission of Texas or the Federal Power Commission, where jurisdiction is applicable, of a wholesale power cost increase and approval by the Public Utility Commission of retail rate adjustments for the Company. The Purchased Power Adjustment Factor is not an automatic adjustment and an application must be filed with the Public Utility Commission for review and approval before being applied to any rate schedules.

When approved the PPAF shall be billed separately on customer statements until new rates are approved."

From July, 1977, to January, 1978, Southwestern Electric Service Company did not request the Commission to implement the purchased power adjustment clause. On January 25, 1978, in Docket No. 1607 the company filed with the Commission its formal application to invoke the purchased power adjustment clause permitted by the Commission's order in Docket No. 318. The reason for Southwestern's application was that the Commission had under considera-

tion an increase in the rates charged to Southwestern's supplier, Texas Power and Light Company, and Southwestern was anticipating this increase. At the time of this increase, Texas Power and Light Company discontinued the special REA rate formerly accorded Southwestern, increasing its wholesale prices.

In June, 1978, the Commission entered its Interim Order in Docket No. 1607 implementing the purchased power adjustment clause. The particular formula for passing through the increased power costs, the purchased power adjustment factor, was set by the Commission at 2.052 mills per kilowatt hour for wholesale customers such as appellant and 1.343 mills per kilowatt hour for retail customers. Thereafter, appellant Cherokee intervened in Docket No. 1607 protesting Southwestern's application requesting authority to put in use the purchased power adjustment clause insofar as it applied to Cherokee.

The Commission entered its order in Docket No. 1607 on January 11, 1979, which provided in part:

"The Commission finds that the use by Southwestern Electric Service Company of the proposed dual PPAF's is justified by the peculiar circumstances of this case.

Texas Power and Light Company's elimination of its REA rate to Southwestern Electric Service Company in Docket No. 1517, which had been a special rate to SESCO for the power SESCO in turn sold to Cherokee, necessitated a purchased power adjustment for Cherokee in addition to the purchased power increase assignable to Cherokee as a result, SESCO's wholesale power increase from TPL.

The Commission finds that the increased cost of purchased power sought to be imposed on Cherokee by SESCO was necessitated by the elimination of the REA rate to SESCO and in the interests of avoiding undue subsidization of the cooperative wholesale customers by the retail customers of SESCO.

The Commission, therefore, specifically grants the use by SESCO of its proposed dual PPAF's as an exception to its PPAC as approved in Docket No. 318. Since the REA rate has been eliminated, it is not anticipated that the peculiar set of facts involved herein will reoccur.

IT IS THEREFORE ORDERED, that Southwestern Electric Service Company implement its Purchased Power Adjustment Clause and recover its increased cost of purchased power from Texas Power and Light Company by use of its proposed dual PPAF's."

Cherokee's point of error one is: "The Public Utility Commission of Texas erred in concluding that it had jurisdiction to change the purchased power adjustment rate." Under this point, Cherokee claims that the Commission had no jurisdiction to order a change in the purchased power adjustment factor because Southwestern failed to file a statement of intent meeting the requirements of § 43(a) of the Public Utility Regulatory Act, Tex.Rev.Civ.Stat. Ann. art. 1446c (1980). Section 43(a) provides:

"Sec. 43. (a) No utility may make changes in its rates except by filing a statement of intent with the regulatory authority having original jurisdiction at least 35 days prior to the effective date of the proposed change. The statement of intent shall include proposed revisions of tariffs and schedules and a statement specifying in detail each proposed change, the effect the proposed change is expected to have on the revenues of the company, the classes and numbers of utility consumers affected, and such other information as may be required by the regulatory authority's rules and regulations. A copy of the statement of intent shall be mailed or delivered to the appropriate officer of each affected municipality, and notice shall be given by publication in conspicuous form and place of a notice to the public of such proposed change once in each week for four successive weeks in a newspaper having general circulation in each county containing territory affected by the proposed change, and to such other affected persons as may be required by the regulatory authority's rules and regulations."

**130**

Cherokee argues that a purchased power adjustment factor falls within the definition of "rate" as set out in Section 43(a). Accordingly, the argument continues, Southwestern was obligated to file a statement of intent setting out the information required by § 43(a). The premise underlying Cherokee's argument seems to be that before the Commission could allow Southwestern to implement the purchased power adjustment clause, it was necessary to conduct a full rate hearing. We do not agree.

The allowance of a purchased power adjustment clause as an administrative practice has long been permitted. *City of Chicago v. Illinois Commerce Comm'n,* 13 Ill.2d 607, 150 N.E.2d 776 (1958). Such clauses are in common use and have been judicially recognized and approved in Texas. *San Antonio Ind. S. D. v. City of San Antonio,* 550 S.W.2d 262 (Tex.1976); *Railroad Comm'n of Texas v. City of Fort Worth,* 576 S.W.2d 899 (Tex.Civ.App.1979, writ ref'd n. r. e.); *Railroad Comm'n of Texas v. High Plains Natural Gas Company,* 611 S.W.2d 908 (Tex.Civ.App.1981, writ pending). The point of such clauses is to to allow adjustments in the revenue of the utility in case of fluctuations in the cost of power without the necessity for a full-scale rate hearing each time the cost of power from the supplier increases or decreases. *Railroad Comm'n of Texas v. City of Fort Worth, supra; Railroad Comm'n of Texas v. High Plains Natural Gas Company, supra.*

The view of this Court is that the Commission had jurisdiction, under the authorities cited, to entertain Southwestern's proceeding to implement the purchased power adjustment without the utility's compliance with the requirements of § 43(a). Point of error one is overruled.

The Commission's construction of the purchased power adjustment clause leaves some room for doubt, especially in view of the language that the clause is "to be applied equally to all rate schedules." Cherokee, however, makes no contention on appeal that the Commission erred in its construction of the clause. As a result, this Court does not pass on that matter.

The judgment is affirmed.