916 P.2d 1259

In the Matter of the Application of BOISE WATER CORPORATION TO REVISE AND INCREASE RATES CHARGED FOR WATER SERVICE.

BUILDING CONTRACTORS ASSOCI-ATION OF SOUTHWESTERN IDA-HO, INC., Petitioner–Appellant,

v.

IDAHO PUBLIC UTILITIES COMMIS-SION and Boise Water Corporation, and Coalition of Boise Water Customers, Re-spondents.

No. 21714.

Supreme Court of Idaho,
Boise, January 1996 Term.

March 5, 1996.

Rehearing Denied June 4, 1996.

increase disproportionately allocates new plant facility costs solely to Boise Water customers connecting new service from July 25, 1994, forward, the increase unlawfully discriminates against the new customers. The decision of the IPUC is vacated and the case is remanded to the IPUC for further proceedings consistent with this opinion.

## I.

### BACKGROUND AND FACTS

In 1986 Congress passed the Safe Drinking Water Act, pursuant to which the Environmental Protection Agency (EPA) promulgated new surface water rules. These rules require that Boise Water chemically treat any water it collects from below the Boise River's stream bed in its four "Ranney collectors" located in the east end of Boise. The east end Ranney collectors provide 25 percent of Boise Water's supply for its service area north of the Boise River. Because of the geological condition of the aquifer in the east end of Boise Water's service territory, potable groundwater to replace the Ranney collector water is unavailable. The only other viable source of water would be water imported from other parts of Boise Water's service area. The cost of importing this water is as substantial as the construction of a new treatment plant and presents other disadvantages. Consequently, Boise Water undertook construction of the Marden Street water treatment plant near Warms Springs Avenue at a cost of $16 million. The treatment plant was completed in 1994 and treats water from three of the Ranney collectors as well as water taken directly from the Boise River.

On December 16, 1993, Boise Water filed an application with the IPUC to increase its rates and charges for water service, including authorization to increase the one-time fee

Hawley, Troxell, Ennis & Hawley, Boise, for appellant. Thomas A. Miller, argued.

Hon. Alan G. Lance, Attorney General, Bradford M. Purdy, Deputy Attorney General, argued, Boise, for IPUC.

Davis, Wright & Tremaine, Boise, for Coalition. Peter J. Richardson, argued.

Kenneth Berquist, Boise, for Boise Water.

SCHROEDER, Justice.

This is an appeal by the Building Contractors Association of Southwest Idaho (Building Contractors) from that portion of a general rate order (Order No. 25640), issued on July 14, 1994, by the Idaho Public Utilities Commission (IPUC), which increased the amount of hook-up fees [1] Boise Water Corporation (Boise Water) may charge for new connections to its water service system from July 25, 1994, forward. To the extent the fee

---

1. It should be noted, by way of clarification, that the fees at issue here are not those charged to

offset the actual per-customer cost of physically connecting to Boise Water's distribution system.

it assesses for new connections to its system. This hook-up fee is assessed whenever new service is furnished, whether to a former Boise Water customer who has moved into a newly constructed home or building, or to a new customer from outside Boise Water's service territory. Boise Water has charged hook-up fees to offset the cost of serving new customers off-and-on since at least 1978.

On January 14, 1994, the IPUC issued a Notice of Application establishing a deadline for all persons interested in appearing as a party at the hearing. The Coalition of Boise Water Customers (Coalition), the Idaho Citizens Coalition (ICC), and Sharon Ullman intervened and participated in the hearing. The appellant, Building Contractors, chose not to intervene.

Boise Water established that its cost per customer of constructing a new well is approximately $250.00, compared with a per customer cost of $1,944.00 for construction of its Marden Street plant. Prior to the decision in this matter Boise Water's hook-up fees were based solely on the cost of new well construction. Thus, the fees did not offset the cost of the new water treatment plant.

No party to the hearing objected to an increase of Boise Water's hook-up fees. The proposed fees ranged from $0 to $2,740.00.[2] Boise Water proposed revising its hook-up fees to reflect the current cost of constructing new wells, and it proposed re-including two previously included components to hook-up fees: booster pumping and storage. That proposal would have increased the hook-up fee from $190.00 to $465.00 for residential customers with ¾-inch or smaller service meters. The IPUC staff proposed a hook-up fee that varied depending on a new customer's location to reflect actual location-specific

variations in the cost of service. The Coalition proposed a $2,100.00 hook-up fee for new service connections without access to a separate irrigation system for non-potable water consumption and a fee of $465.00 for those with access to separate irrigation. The ICC's witness, Dr. Thomas Power, an economist from the University of Montana, recommended an increase to fully cover the actual cost of adding a new customer to the system.[3]

On July 14, 1994, the IPUC issued Order No. 25640 approving a 29.59 percent general rate increase and increasing the hook-up fee to $1,200.00 for ¾-inch meters or smaller. A similar increase was approved for larger meters. The IPUC reasoned that, because the cost of supply for a new service connection varied greatly depending on whether the water supply came from a well or a water treatment plant, it was reasonable to use an average of the two costs, plus an amount for storage and pumping boosters. The IPUC also noted that the $1,200.00 fee was roughly the mid-point between the IPUC Staff's recommended range of $0 to $2,740.00, and that its decision would help protect existing ratepayers from the costs associated with growth and "ensure that growth pays for itself."

The IPUC rejected its staff's proposal to tie individual hook-up fees to the actual costs associated with a specific location, because a practical method of delineating between customers based on their geographic location does not exist. The IPUC agreed with the Coalition that a discount should be offered to those connecting new service who have access to a separate irrigation system, because, as a whole, they will contribute much less to Boise Water's peak demand.

On August 4, 1994, the Building Contractors became involved in the proceeding for the first time by filing a Petition for Reconsideration of Order No. 25640. The Building

2. IPUC Staff recommended a $0 hook-up fee for small, individual or commercial customers in low supply cost areas.

3. Dr. Power testified in *Idaho State Homebuilders v. Washington Water Power Co.*, 107 Idaho 415, 690 P.2d 350 (1984). The *Homebuilders* court relied heavily on his testimony to the effect that old and new customers are both responsible for rising demand. It appears he has changed his view in the intervening years.

Contractors argued that the new hook-up fees discriminate between old and new customers in contravention of this Court's ruling in *Idaho State Homebuilders v. Washington Water Power Co.*, 107 Idaho 415, 690 P.2d 350 (1984), and that the discount for those with access to a separate irrigation system promotes urban sprawl. The Building Contractors requested that the IPUC reopen the record or, in the alternative, that reconsideration be granted through written briefing.

The IPUC granted the Building Contractors' petition but declined to reopen the record for the introduction of additional evidence, because the Building Contractors' challenge was not based on a factual dispute. The IPUC issued Order No. 25761 on October 14, 1994, rejecting the Building Contractors' arguments and affirming the findings contained in Order No. 25640. In particular, the IPUC concluded that the Building Contractors' reliance on *Homebuilders* was misplaced:

We find that the [Building Contractors'] interpretation of *Homebuilders* is incorrect. We do not believe that the Supreme Court prohibited this Commission from recovering from customers, through hook-up fees, the cost of supply, so long as the hook-up fees are based on one or more of the factors enumerated in *Homebuilders,* such as cost of service or time, nature and pattern of use.

The IPUC also found that, because the cost of connecting to a separate irrigation system more than offset the $735.00 discount such customers received in their hook-up fee, the "discount" did not constitute preferential treatment. The IPUC concluded that it is not a land use planning agency and has no control over or responsibility for where growth takes place. Thus, it ruled, it cannot be held accountable for "urban sprawl."

The Building Contractors appealed those portions of Orders Nos. 25640 and 25761 which authorized an increase in Boise Water's hook-up fees.

## II.

## STANDARD OF REVIEW

■ This Court's jurisdiction to review decisions of the IPUC is limited by Article 5, section 9 of the Idaho Constitution. *A.W. Brown Co. v. Idaho Power Co.*, 121 Idaho 812, 815, 828 P.2d 841, 844 (1992). The scope of the Court's limited review is defined in section 61–629 of the Idaho Code which states, in relevant part:

The review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho.

I.C. § 61–629 (1994). This Court will uphold the IPUC's findings of fact where they are supported by substantial, competent evidence in the record. *A.W. Brown,* 121 Idaho at 815–16, 828 P.2d at 844–45. We will not displace the agency's choice between two fairly conflicting views, even though the Court might justifiably arrive at a different conclusion if the matter were before it *de novo. In re Hayden Pines Water Co.,* 111 Idaho 331, 336, 723 P.2d 875, 880 (1986). Thus, the IPUC's findings of fact must be affirmed, unless it appears that the clear weight of the evidence is against the conclusion or that the evidence is strong and persuasive that the IPUC has abused its discretion. *A.W. Brown,* 121 Idaho at 816, 828 P.2d at 845.

■ In addition to making findings of fact based on substantial, competent evidence, the IPUC must explain the reasoning employed to reach its conclusions in order to ensure that the IPUC has applied relevant criteria prescribed by statute or its own regulations and has not acted arbitrarily or capriciously. *See Washington Water Power v. Idaho Pub. Util. Comm'n,* 101 Idaho 567, 575, 617 P.2d 1242, 1250 (1980) ("Not only must the Commission make and enter proper findings of fact, but it must set forth its reasoning in a rational manner.").

The respondents maintain that the decision of the IPUC should be upheld because the decision is supported by substantial, competent, and unrefuted evidence in the record.

However, the question presented here is whether in allocating the entire increased cost of resource supply to new customers via increased hook-up fees the IPUC regularly pursued its authority to set nondiscriminatory rates as required by sections 61–301, 61–315, –502, and –503 of the Idaho Code. *Homebuilders,* 107 Idaho at 418–20, 690 P.2d at 353–55.

## III.

## THE HOOK–UP FEES APPROVED BY THE IPUC UNLAWFULLY DISCRIMINATE AGAINST NEW BOISE WATER CUSTOMERS.

■ The IPUC has broad authority to regulate and fix the rates and charges assessed by Idaho's public utilities for services. I.C. § 61–502 (1994); I.C. § 61–503 (1994); *Homebuilders,* 107 Idaho at 419, 690 P.2d at 354. Section 61–301 of the Idaho Code requires that all rates and charges must be just and reasonable. Section 61–315 of the Idaho Code prohibits either preferential or discriminatory treatment of ratepayers by public utilities. *Homebuilders,* 107 Idaho at 419, 690 P.2d at 354. Section 61–315 also provides that the IPUC shall have the power to determine any question of fact arising under it. It follows that the IPUC's authority may only be exercised in such a way as to fix non-discriminatory and non-preferential rates and charges. *Id.*

■ The Building Contractors maintain that the hook-up fees approved by the IPUC unlawfully discriminate against Boise Water customers connecting new service on or after July 25, 1994, based on the fact that the new hook-up fees allocate the entire incremental cost of new resource plant construction to new customers. They argue that this allocation is premised on the flawed idea that only new customers are responsible for increased resource demand.

In *Homebuilders,* Washington Water Power requested approval for a seasonal commodity rate that would serve as a signal to all electric customers regarding the utility's higher cost of resource supply in winter and thus encourage energy conservation. 107 Idaho at 417, 690 P.2d at 352. The IPUC rejected this proposal in favor of a one-time, non-recurring contribution charge of $50.00 per installed kilowatt of capacity for all new customers who used electricity for space heating. *Id.* at 418, 790 P.2d at 353. Because this charge would result in a typical contribution charge of between $1,000.00 and $2,000.00 per new residential customer, the Idaho State Homebuilders Association petitioned to intervene in the case and ultimately appealed the IPUC's decision to this Court. *Id.*

The *Homebuilders* court concluded that the contribution charge unlawfully discriminated between Washington Water Power's "new" and "old" customers, rejecting the notion that only "new" customers are responsible for the level of resource demand in the winter months. *Id.* at 421, 690 P.2d at 356. Although the record established that increased demand necessitated an increased reliance on more expensive resources, the Court concluded that the resultant increased costs did not equate with a "difference in criteria of cost of service or difference in condition of service as between the two classes." *Id.*

The IPUC argues that, unlike the contribution charge at issue in *Homebuilders,* the hook-up fees at issue in this case are not new—all Boise Water customers have had to pay hook-up fees for new service connection since 1978, and those fees have simply increased to reflect increased costs. However, the Building Contractors maintain that the two fees are not similar, because, unlike the new fees, the old fees did not contain incremental or marginal capital investment costs of new plant construction. The Building Contractors concede that hook-up fees may be charged and need to be increased incrementally from time to time to reflect such factors as inflation, but they object to a fee increase which places the entire cost burden associated with system growth on new customers.

Not all differences in a utility's rates and charges as between different classes of customers constitute unlawful discrimination or preference under the strictures of section 61–315 of the Idaho Code. *Homebuilders*, 107 Idaho at 420, 690 P.2d at 355. A reasonable classification of utility customers may justify the setting of different rates and charges. *Id.* Any such difference in rates and charges must be justified by a corresponding classification of customers that is based on such factors as cost of service, quantity of resource use, differences in the condition of service or in the time, nature or pattern of the customers' use. *Id.*

Like the facts in *Homebuilders*, the pattern, nature, and time of Boise Water customers' usage did not change on July 25, 1994, nor did the conditions of service. *Id.* at 421, 690 P.2d at 356. Similarly, the quantity of water used by Boise Water's individual customers before July 25, 1994, does not differ from the quantity used by individual customers added to the system after that date. *Id.* Thus, as in *Homebuilders*, the focus of this case is whether the cost of service differs between the two classes.

The cost of servicing all Boise Water customers has increased, due in part to passage of the Safe Drinking Water Act, limitations on the availability of water, and inflationary factors. While it is true that the cost of service has increased, the cost has increased proportionately for each Boise Water customer. There is no difference in the cost of service between customers who connected to Boise Water's system before July 25, 1994, and those who have connected or will connect to the system from that date forward. Each new customer that has come into the system at any time has contributed to the need for new facilities. No particular group of customers should bear the burden of additional expense occasioned by changes in federal law that impose new water quality standards. To the extent that the new hook-up fees are based on an allocation of the incremental cost of new plant construction required by growth and by the Safe Drinking Water Act solely to new customers, the fees unlawfully discriminate between old and new customers in violation of section 61–315 of the Idaho Code.

## III.

## CONCLUSION

The decision of the IPUC in Orders Nos. 25640 and 25761 is vacated, and this matter is remanded to the IPUC for further proceedings consistent with this opinion. Costs are awarded on appeal to the Building Contractors pursuant to Idaho Appellate Rule 40.

McDEVITT, C.J., JOHNSON and TROUT, JJ., and REINHARDT, J. Pro. Tem., concur.