1 P.3d 786

**In the Matter of the Application of Idaho Power Company for Authority to Increase its Rates and Charges to Recover Demand Side Management/Conservation Expenditures.**

**INDUSTRIAL CUSTOMERS OF IDAHO POWER and Micron Technology, Inc., Appellants,**

v.

**IDAHO PUBLIC UTILITIES COMMISSION and Idaho Power Company, Respondents.**

No. 25055.

Supreme Court of Idaho, Boise, December 1999 Term.

April 17, 2000.

Richardson & O'Leary, Boise, for appellants. Peter J. Richardson argued.

Hon. Alan G. Lance, Attorney General; Brad M. Purdy, Deputy Attorney General, Boise, for respondent, Idaho Public Utilities Commission. Brad M. Purdy argued.

Larry D. Ripley, Boise, for respondent, Idaho Power Company.

SILAK, Justice.

This is an appeal from an order of the Idaho Public Utilities Commission granting respondent Idaho Power Company's application for approval and accelerated recovery of certain deferred demand side management expenditures. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. Factual Background

During the mid to late 1980's and early 1990's, Idaho Power Company (the Company) implemented a variety of demand side management (DSM) programs designed to help reduce energy consumption and thereby defer acquisition of new and higher cost resources. Such programs included: "Good Cents Homes;" "Manufactured Home Acquisition;" "Low–Income Weatherization;" and "Commercial Lighting."

For each of its DSM programs, the Company made an initial filing with the Idaho Public Utilities Commission (the Commission) seeking to defer the related program expenses. The Commission allowed the implementation and deferral of the expenditures. The Commission, however, withheld its authority to allow the Company to ultimately recover those expenditures until after the expenses were incurred and upon a finding that the programs were prudent. If the Commission ultimately does authorize recovery of a deferred DSM expense, that expense can be amortized over a period of years and may include recovery of interest, referred to as a carrying charge.

Concerned that the Company's deferred DSM balances would accumulate to an amount that, when authorized, would result in a significant increase in rates, the Commission conducted a general rate case, and on January 31, 1995, issued Order No. 25880 authorizing recovery of the Company's pre–1994 DSM expenditures over a twenty-four year period. These expenditures were offset by an equivalent designation as a regulatory asset and accounted for in the Company's rates at an authorized 9.199% rate of return.

On August 3, 1995, a stipulated moratorium was entered into in which it was agreed that the Company's rate base would not be changed until January 1, 2001. The stipulation provided, however, three exceptions. Relevant to this appeal is the exception that the Company would not be prohibited from "requesting changes in the manner in which demand side management charges are recovered." Both appellants, Industrial Customers of Idaho Power (ICIP) and Micron Technology Inc. (Micron), were parties to the stipulation proceedings, but only Micron signed the agreement.

### B. Procedural Background

In November, 1997, the Company filed an application for authorization to begin recovery of its DSM expenditures made after 1993 and for authorization to accelerate the recovery of all its outstanding DSM balances from twenty-four years to five years.

Following the Company's application, ICIP and Micron filed motions to dismiss arguing that: 1) the Company failed to state a valid justification for accelerating DSM recovery; 2) the application violated the rate moratorium; 3) the issues were for the Idaho Legislature; and 4) it is impermissible for the Commission to adjust rates to reflect only one item.

The Commission denied appellants' motion to dismiss. The Commission conducted an evidentiary hearing on the authorization of post–1993 DSM expenditures and acceleration of the amortization period. In July 1998, the Commission issued Order No. 27660 authorizing the Company to begin recovery of some of its post–1993 DSM expenditures, and to accelerate recovery of all its outstanding DSM balances from twenty-four years to twelve years.

Appellants filed a joint petition for reconsideration. The Company filed a petition for reconsideration and clarification. After considering the arguments raised, the Commission issued Order No. 27722, denying appellants' and respondent's petitions for reconsideration and affirming its earlier order.

Appellants filed this appeal of the Commission's denial of their petition for reconsideration of Order No. 27660.

## II.

### ISSUES ON APPEAL

The issues presented on appeal are as follows:

A. Whether the Commission had the authority to reduce the amortization period of the Company's DSM expenditures.

B. Whether the Commission erred when it treated the Company's recovery of deferred DSM expenditures as a single item expense rather than a general rate case.

C. Whether the Commission's authorization of post–1993 DSM programs was supported by substantial evidence.

D. Whether the Commission's selection of a twelve-year amortization period was supported by substantial evidence.

## III.

### STANDARD OF REVIEW

The Idaho Constitution provides that the Supreme Court shall have jurisdiction to review on appeal any order of the Commission. IDAHO CONST. art. V, § 9. The Idaho Code has limited the scope of this review:

> The review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho.

I.C. § 61–629.

 Review of Commission determinations of questions of law is limited to a determination of whether the Commission has regularly pursued its authority and whether the constitutional rights of the appellant have been violated. *See A.W. Brown, Inc. v. Idaho Power Co.,* 121 Idaho 812, 815, 828 P.2d 841, 844 (1992). In reviewing findings of fact, we will sustain the Commission's determination unless it appears that the clear weight of the evidence is against its conclusion or that the evidence is strong and persuasive that the Commission abused its discretion. *See Utah–Idaho Sugar Co. v. Intermountain Gas Co.,* 100 Idaho 368, 376, 597 P.2d 1058, 1066 (1979). Where the Commission's findings are supported by substantial, competent evidence, this Court must affirm those findings and the Commission's decision. *See A.W. Brown,* 121 Idaho 812 at 815–16, 828 P.2d at 844–45.

## IV.

### ANALYSIS

### A. The Commission Had Authority To Reduce The Amortization Period.

 At the outset, appellants argue that pursuant to Section 61–502 of the Idaho

Code, the Commission does not have authority to reduce the amortization period of the Company's DSM expenditures. It is argued that in order for the Commission to have the authority to change the rates of a public utility, the Commission must first find that existing rates are "unjust, unreasonable, discriminatory or preferential." Appellants misread I.C. § 61–502.

■ The function of ratemaking is legislative and not judicial. The Commission, as an agency of the legislative department of government, exercises delegated legislative power to make rates. So long as it regularly pursues its authority and remains within constitutional limitations, the courts have no jurisdiction to interfere with its determinations. Thus, the Commission's rate-setting order carries with it the presumption of validity. *See Application of Utah Power & Light Co.*, 107 Idaho 446, 448–49, 690 P.2d 901, 903–04 (1984). The Commission is vested with the power to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of the Public Utilities Law. *See* I.C. § 61–501. The Commission has the power to investigate a single rule, regulation, contract or practice of any public utility and to establish new rules, regulations contracts or practices. *See* I.C. § 61–503.

Before the Commission can increase rates, it must first make a finding that such increase is justified. Section 61–622 of the Idaho Code provides in relevant part:

> The commission shall have power, and is hereby given authority, either upon complaint or upon its own initiative ... to enter upon a hearing concerning the propriety of such rate, fare, ... rule or regulation.... On such hearing, the commission shall establish the rates, fares, ... rules or regulations proposed, ... which it shall find to be just and reasonable.

I.C. § 61–622.

Section 61–502 of the Idaho Code further provides:

> Whenever the commission, *after a hearing* had upon its own motion or upon complaint, shall find that the rates ... charged or collected by any public utility ... are

unjust, unreasonable, discriminatory or preferential, or in any wise in violation of any provision of law, *or that such rates ... are insufficient,* the commission shall determine the just, reasonable or sufficient rates ... to be thereafter observed....

I.C. § 61–502 (emphasis added).

■ Thus, a careful reading of the statutes governing its operation indicate that the Commission has the authority to conduct a hearing to determine the propriety of any rate, fare, rule or regulation and thereafter shall establish just and reasonable rates if it finds that the currently established rates are insufficient. The pre-conditions of the Commission's authority under I.C. § 61–502 are established in the alternative. The Commission need not first find that the currently charged rates are unjust, unreasonable, discriminatory or preferential.

Here, the Commission had authority under I.C. § 61–622 and I.C. § 61–502 to modify the Company's amortization period and rate. After receiving a petition by the Company and conducting a full hearing on the matter, the Commission determined that the amortization period of twenty-four years, which had been previously established, was too long. The Commission thereby set the amortization period for the Company's DSM expenditures at twelve years. The Commission determined that the Company's then-authorized rate would be insufficient to accommodate the shorter amortization period and authorized a rate increase necessary to recover such expenditures. Nothing in the record indicates that the Commission departed from regularly pursuing its statutory authority when it conducted a hearing upon the Company's motion and subsequently set a new rate.

**B. The Commission May Authorize A Rate Increase To Recover A Single Item Expense Without Conducting A General Ratemaking Proceeding.**

Appellants assert that the Commission may not, under these circumstances, authorize a rate increase without taking into account the Company's total revenues, expenses and other costs of doing business. Additionally, appellants assert that allowing

accelerated recovery of its DSM expenditures would increase the Company's authorized rate of return. The thrust of appellants' argument, therefore, is that the Commission may not authorize a rate increase in this case without conducting a general rate proceeding.

Idaho law permits the Commission to authorize a rate change in some instances without conducting a general ratemaking proceeding. In *J.R. Simplot Co. v. Intermountain Gas Co.*, 102 Idaho 341, 630 P.2d 133 (1981), this Court held that where a gas utility sought to maintain its authorized rate of return by passing through to its customers the increased cost of natural gas, the Commission was not required to conduct the type of hearing used in a general rate proceeding in order to raise rates. *See* 102 Idaho at 342, 630 P.2d at 134. The Court in *Simplot* stated that in the regulatory context, due process is a flexible concept permitting expert administrative agencies broad latitude to adapt procedures to the specific regulatory needs of their jurisdictions. *See id.*

Appellants argue that the circumstances of the present case differ from that of *Simplot* in three aspects: 1) control over the expenditure; 2) timing since last general rate case; and 3) impact on authorized rate of return. Therefore, appellants argue, this case should not have been treated as a "tracker" or "pass through" case.

This situation does not differ from *Simplot* as much as the appellants contend. This Court's decision in *Simplot* addressed the constitutional implications and limited application of the narrow facts and circumstances of that case to a general policy and practice in the area of administrative regulation and ratemaking.

As previously stated, ratemaking is a legislative function and not judicial. So long as the Commission pursues its authority and remains within constitutional limitations, this Court has no jurisdiction to interfere with its determinations. *See Application of Utah*

*Power & Light Co.*, 107 Idaho at 448–49, 690 P.2d at 903–04. In this sense,

> [t]he Constitution does not bind rate-making bodies to the service of any single formula or combination of formulas. Agencies to whom this legislative power has been delegated are free, within the ambit of their statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances. Once a fair hearing has been given, proper findings made and other statutory requirements satisfied, the courts cannot intervene in the absence of a clear showing that the limits of due process have been overstepped. If the Commission's order, as applied to the facts before it and viewed in its entirety, produces no arbitrary result, our inquiry is at an end.

*City of Los Angeles v. Public Utilities Commission*, 15 Cal.3d 680, 125 Cal.Rptr. 779, 542 P.2d 1371, 1383 (1975) (quoting *Federal Power Comm'n v. Pipeline Co.*, 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037, 1049–50 (1941)).

It appears necessary to clarify the basis upon which this Court acknowledged the use of abbreviated proceedings by a public utilities commission in single item expense cases.[1] In *Simplot*, this Court analyzed decisions of other courts for insight into the requirements of due process when a public utilities commission is faced with a requested rate increase due to a single item expense. The Supreme Court of California, in *City & County of San Francisco v. P.U.C.*, 39 Cal.3d 523, 217 Cal.Rptr. 43, 703 P.2d 381 (1985), articulated the sound reasoning behind allowing abbreviated proceedings in certain circumstances. The court stated:

> In a general rate setting proceeding, the commission determines for a test period the utility expense, the utility rate base, and the rate of return to be allowed. Using those figures, the commission determines the revenue requirement and then fixes the rates for the customers to produce sufficient income to meet the revenue requirement.... [¶] The rates are fixed

---

1. The concept of allowing an agency to conduct abbreviated proceedings when faced with a single item expense has been alternately referred to

as a "tracker," "pass through" or "offset" proceeding.

in the general proceedings on the basis of historical data. Adjustments may be made in that proceeding for anticipated future extraordinary changes. [citation.] It is obvious revenue, expense and rate base arrived at on historical data will not remain constant in future years when the rates take effect. The assumption underlying fixing of future rates on historical data is that for future years changes in the revenue, expense, and rate base will vary proportionately so that the utility will receive a fair rate of return.

. . .

In an offset proceeding, by contrast, both the purpose and the scope of the commission's inquiry is limited. In such a proceeding, the commission, without waiting until the utility's next general rate proceeding, determines whether there has occurred a significant and not reasonably foreseeable change in an item of expense or revenue that, unless taken into account of, would seriously affect the utility or its ratepayers. [citation.] As a consequence, the commission is not required to conduct an inquiry equivalent to that in a general rate proceeding, "recalculating all expenses, revenues, rate base, and rate of return .... " [citation.] Rather the commission need only determine the relevant extraordinary change and then take account of it by adjusting the utility's rates to offset the effect of such change, with all other items of expense and revenue held constant as estimated in the utility's most recent general rate proceeding.

*Id.* 217 Cal.Rptr. 43, 703 P.2d at 385 (citing *California Manufacturers Assn. v. Public Utilities Comm'n,* 24 Cal.3d 251, 155 Cal. Rptr. 664, 595 P.2d 98 (1979)). *See also Southern Cal. Edison Co. v. Public Utilities Comm'n.,* 20 Cal.3d 813, 144 Cal.Rptr. 905, 576 P.2d 945 (Cal.1978).

■ Here, it appears that the Commission's decision to allow a rate increase to reflect directly, the single cost associated with an accelerated recovery of deferred DSM expenditures represents precisely the situation for which the Commission has adopted abbreviated proceedings. The Commission, after petition and full hearing on the matter, determined that a reduced amortization period for all of the Company's DSM expenditures was appropriate. Faced with an accelerated period of recovery, the Commission found that the Company's current authorized rate was insufficient. The Commission therefore increased the Company's rate to directly reflect the revenue necessary to offset accelerated recovery of the Company's authorized DSM expenditures.

It is argued by appellants that authorizing and accelerating recovery of deferred DSM expenditures will increase the Company's authorized rate of return and therefore cannot be done without conducting, in essence, a general rate proceeding. It is important to note that the Company is not seeking an increased rate of return or increased net annual earnings. The application submitted by the Company seeks to pass through to its customers at an increased rate, the cost of the DSM expenditures from which they have benefited. *Compare Montana Consumer Counsel v. Public Service Comm'n,* 168 Mont. 180, 541 P.2d 770, 773–74 (Mont.1975).

■ The Commission concluded that acceleration of DSM recovery would not affect the Company's rate of return. Questions of rate of return are matters which raise extremely complicated issues. These issues are within the area of expertise, and their resolution a function of the Commission. *See Washington Water Power Co. v. Idaho Pub. Utils. Comm'n,* 101 Idaho 567, 575, 617 P.2d 1242, 1250 (1980). We agree that an accelerated rate of recovery for the Company's DSM expenditures will not affect the Company's authorized rate of return.

■ Rate of return is the term used in public utility regulation to describe the compensation, which the owners receive over and above gross revenue and allowable deductions. It is the annual income from an investment, expressed as a percentage of the investment. *See* BLACK'S LAW DICTIONARY, 7th ed.1999. The general procedure for fixing a rate of return is to calculate the utility's capital investment amount or "rate base" by assessing the utility's property value, its costs and investment in property, and then

determine what percentage of that rate base should be allowed as a fair return.

DSM expenditures differ, however, from traditional capital investments. When a DSM expenditure is authorized for recovery by the Commission, two things occur. First, a directly proportional "regulatory asset" is placed on the utility's books to offset the expenditure and therefore, though technically included as part of a utility's rate base, the net effect of an authorized DSM expenditure on a utility's rate base is zero. Second, a period of amortization is established over which the expenditure may be recovered. For each year of the amortization period, a portion of the principal is reclaimed, interest is collected, and the regulatory asset is decreased proportionally. Therefore, although a utility may have an extremely large "investment" represented by DSM expenditure, that investment has no effect on the calculation of the utility's rate base, and in turn does not affect calculation of the utility's rate of return.

Here, the Company's last general rate case was conducted in 1995. At that time, authorization was given for amortization of the Company's outstanding DSM expenditures over a twenty-four year period. The amount of the outstanding balance was offset, for accounting purposes, by an equal figure representing a regulatory asset. Calculation of the Company's rate base was therefore unaffected by the DSM expenditures and the rate of return was based solely upon the Company's remaining costs of doing business. Likewise, accelerated recovery of its DSM expenditures will not affect the Company's base rate or rate of return because the increased rate of recovery will be offset proportionately by a decrease in the regulatory asset.

To permit the Company to receive interest on its DSM investment, the Commission initially considered the nature of the expenditure and the various risks involved in recovery, and authorized a "carrying charge" on the regulatory asset equal to the Company's authorized rate of return. Upon recognizing that the Company would experience decreased risk of recovery with an accelerated amortization period, the Commission de-

creased the carrying charge allowed on the regulatory asset from the 9.199% which had been authorized during the last general rate case, to 7.25%. In short, while the Company will be recovering its DSM capital more rapidly, the rate of return on that capital has actually decreased. Additionally, the Company will receive less total return on its investment due to the shorter amortization period.

Therefore, we hold that an accelerated rate of recovery of the Company's DSM expenditures will not increase the Company's authorized rate of return and that the Commission regularly pursued its statutory authority when it adopted abbreviated proceedings to account for the Company's single item expense.

## C. The Commission's Authorization For Recovery Of Post–1993 DSM Expenditures Was Supported By Substantial Evidence.

■ Appellants argue that the Commission's authorization of the Company's post–1993 DSM expenditures is not supported by substantial evidence. We hold that there is substantial and competent evidence in the record to support the Commission's findings and conclusions that the Company's post–1993 DSM expenditures were prudent.

■ In reviewing findings of fact, this Court will sustain the Commission's determination unless it appears that the clear weight of the evidence is against its conclusion or that the evidence is strong and persuasive that the Commission abused its discretion. *See Application of Hayden Pines Water Co.,* 111 Idaho 331, 335, 723 P.2d 875, 879 (1986); *Utah–Idaho Sugar v. Intermountain Gas Co.,* 100 Idaho 368, 376, 597 P.2d 1058, 1066. Conversely, if the findings of the Commission are not supported by substantial and competent evidence, or the Commission clearly abused its discretion, then the Court must afford relief to the appellant. *Id.* The Commission's findings of fact are therefore entitled to a presumption of correctness, and the burden is on the appealing party to show that those findings are not supported by substantial evidence. *See Rosebud Enter-*

*prises, Inc. v. Idaho Public Utilities Comm'n*, 128 Idaho 624, 631, 917 P.2d 781, 788 (1996).

In *Idaho State Insurance Fund v. Hunnicutt*, 110 Idaho 257, 715 P.2d 927 (1985), this Court described the appropriate test for substantial competent evidence for the purposes of judicial review of an administrative agency's action as follows:

> The "substantial evidence rule" is said to be a "middle position" which precludes a *de novo* hearing but which nonetheless requires a serious review which goes beyond the mere ascertainment of procedural regularity. Such a review requires more than a mere "scintilla" of evidence in support of the agency's determination, though "something less than the weight of the evidence." "Put simply", we wrote, "the substantial evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.' "

110 Idaho at 260, 715 P.2d at 930. (citations omitted).

Under these circumstances, the Commission's findings are given a presumption of validity. The Commission determined, based upon its own expertise and evidence presented to it, that the Company had met its burden of proof with respect to the cost-effectiveness of its DSM expenditures. Beyond the assertion that the Commission did not conduct independent evaluations of select DSM programs, appellants have not come forward with any evidence to show that the Commission abused its discretion. The record shows, and appellants admit in their petition for rehearing, that the Commission did in fact evaluate the Company's reports on the cost-effectiveness of the programs in question. The Commission's staff witness, Anderson, stated that the Company "consistently pre-evaluated its DSM programs as evidenced by the fact that it brought them to the Commission for its review and approval before actually implementing them." Moreover, after evaluation of the Company's Commercial Lighting Program (CLP), the Commission disallowed recovery of a portion of the Company's investment in that program.

The weight of the evidence presented indicates that all but a portion of the Company's post–1993 DSM expenditures were cost-effective. Additionally, no evidence was presented indicating that any of the subject DSM programs were not cost-effective. Therefore, we find that the evidence presented afforded the Commission a reasonable basis upon which to authorize the Company's post–1993 expenditures and was therefore supported by substantial evidence.

## D. The Commission's Decision To Accelerate Amortization Of Deferred DSM Expenditures From 24 To 12 Years Was Supported By Substantial Evidence.

Appellants finally argue that the Commission's decision to accelerate the amortization period from twenty-four to twelve-years is unsupported by substantial evidence. The thrust of appellants' assertion is that no evidence was presented indicating, specifically, the reasonableness of a twelve-year amortization period. We find the appellants' argument unpersuasive.

Under the facts of this case, there appears ample evidence by which the Commission could determine that a twelve-year amortization period was just and reasonable. Appellants argue that evidence was presented indicating the reasonableness of twenty-four, seven, and five year amortization periods but that no evidence was presented discussing the reasonableness of a twelve-year period. This Court has recognized previously that the Commission, as finder of fact, need not weigh and balance the evidence presented to it but is free to accept certain evidence and disregard other evidence. *See Application of Utah Power & Light Co.*, 107 Idaho 446, 451, 690 P.2d 901, 906 (1984). Additionally, the Commission is free to rely on its own expertise as justification for its decision. *See Boise Water Corp. v. Idaho Public Utilities Commission*, 97 Idaho 832, 842, 555 P.2d 163, 173 (1976); *Intermountain Gas Co. v. Idaho Public Utilities Commission*, 97 Idaho 113, 126, 540 P.2d 775, 788 (1975).

It appears clear that when faced with competent testimony on the reasonableness of five, seven, and twenty-four year amortiza-

294

tion periods, the Commission could, relying upon the testimony presented in addition to its own expertise, reasonably determine that a twelve-year amortization period was adequate and reasonable. We find no error in the Commission's determination.

## V.

### CONCLUSION

Accordingly, the order of the Idaho Public Utilities Commission is affirmed. Costs to respondents. No attorney fees were requested.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.

