65 P.3d 498 (2003)
138 Idaho 476
In the Matter of JAY HULET'S COMPLAINT REGARDING IDAHO POWER COMPANY'S IRRIGATION BUY-BACK PROGRAM.
Jay H. Hulet, Complainant-Appellant on Appeal,
v.
Idaho Public Utilities Commission, Respondent on Appeal, and
Idaho Power Company, Respondent-Respondent on Appeal.
No. 28262.
Supreme Court of Idaho, Boise, January 2003 Term.
February 26, 2003.
*499 Ringert, Clark Chtd., Boise, for appellant. James G. Reid argued.
Hon. Lawrence G. Wasden, Attorney General; Boise, for respondent. John R. Hammond, Jr. argued for the Idaho Public Utilities Commission.
Monica B. Moen, Boise, argued for Idaho Power.
WALTERS, Justice.
This is an appeal from a final order of the Idaho Public Utilities Commission (IPUC) dismissing Jay Hulet's complaint requesting that Idaho Power Co. retroactively accept his farm into the Company's Irrigation Buy-Back Program for the 2001 growing season. We affirm the dismissal.

FACTS AND PROCEDURE
Hulet, an irrigator with farms at Oreana and Murphy Flats, Idaho, received a Request for Proposals (RFP), an Offer Form, a bid form, and a cover letter from Idaho Power regarding its Irrigation Buy-Back Program. The RFP, which detailed the program requirements, specifically stated that bidders wishing to participate in the program were to submit written bids to the Company on or before February 28, 2001. Hulet later attended a public workshop and spoke with Idaho Power's representative regarding the program, made inquiries about the program and confirmed that the deadline for submitting a bid was February 28, 2001. The information that Hulet claims to have received from Idaho Power allegedly led to his not filing a bid and ultimately to not being allowed to participate in the Buy-Back Program.
In June of 2001, Hulet filed a complaint pro se with the IPUC, requesting the inclusion of his Oreana farm into the Buy-Back Program. Hulet claimed in his complaint that Idaho Power representatives on several occasions had falsely represented to him that he would not be eligible to submit a bid to participate because of unpaid and outstanding power bills for his two farms. Consequently, Hulet entered into agreements to transfer the meters on the Murphy Flats farm to his son, one of the lessees, and to otherwise lease part of that farm to a third party, in whose names the bids could be submitted to be included in the Buy-Back Program. Hulet made a second claim regarding the improper dispersal of his financial records to third persons by Idaho Power. Both claims, according to Hulet, caused him significant financial harm; but the relief he seeks is limited to having the Oreana farm included in the Buy Back Program.
By order dated September 28, 2001, the Commission issued an order dismissing Hulet's complaint. Hulet submitted a petition for reconsideration and request for an evidentiary hearing, which the Commission granted. The hearing was held on January 15, 2002, and was limited to deciding whether Hulet was entitled to participate in the Buy-Back Program.
The Commission heard evidence from Jay Hulet and his son-in-law, Mike Ihli, who was the assistant manager of Hulet's farming operations. In substantially the same terms, the two men testified that Hulet was told by Idaho Power representatives that he would be unable to submit a bid because of his outstanding delinquent accounts with Idaho Power and that he would be required to pay a deposit of approximately $180,000 to participate in the program. Hulet read Section 4.2 of the RFP to allow him to deduct any past due balance he owed the company from any payment he would receive through participation in the program. On behalf of Idaho Power, Maggie Brilz testified that the Company did not accept any bids from customers that were submitted after February 28, 2001. She also testified that customers who had past due balances had applied by submitting their bids, and these customers were required to pay their outstanding bills in full plus make a deposit for the current irrigation year within a reasonable time prior to having their offers accepted by Idaho Power. Mike *500 Liechty testified that he had made representations to Hulet and Ihli that all meters included in the bid would have to be "on" before a bid could be accepted, referencing Section 3.7 of the RFP. He asserted that at no time had he advised Hulet that Hulet could not submit a bid into the program because his irrigation accounts were in arrears.
In its order following reconsideration, the Commission gave more weight to the testimony of Mike Liechty over that of Hulet and Ihli and determined that Hulet had not been misinformed as to the time within which his bid had to be submitted. The Commission rejected Hulet's arguments that Liechty had misrepresented the program requirements and regarding the interpretation of the language of the RFP. The Commission concluded, therefore, that Hulet had been reasonably barred from participating in the program and on February 12, 2002, issued an order reiterating the dismissal of Hulet's complaint on the basis that Hulet had failed to present sufficient evidence to demonstrate that the Commission's earlier order should be vacated.
Hulet appeals from the Commission's order, arguing that the Commission erred (1) in finding that Idaho Power could orally contradict the express terms of the written RFP, and (2) in holding that Hulet was properly barred from bidding into the program after the February 28, 2001, deadline.

STANDARD OF REVIEW
Jurisdiction to review an appeal from an order of the Commission is provided by Article V, Section 9 of the Idaho Constitution. In re Boise Water Corp. to Revise and Increase Rates Charged for Water Service, 128 Idaho 534, 916 P.2d 1259 (1996). The scope of review, framed by I.C. § 61-629, is as follows:
No new or additional evidence may be introduced in the Supreme Court, but the appeal shall be heard on the record of the commission as certified by it. The review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho.
The Commission's findings of fact are to be sustained unless it appears that the clear weight of the evidence is against its conclusions or that the evidence is strong and persuasive that the Commission abused its discretion. Industrial Customers of Idaho Power v. Idaho PUC, 134 Idaho 285, 288, 1 P.3d 786, 789 (2000). The Court will not displace the Commission's findings of fact when faced with conflicting evidence, "even though the Court would have made a different choice had the matter been before it de novo." Rosebud Enterprises, Inc. v. Idaho PUC, 128 Idaho 609, 618, 917 P.2d 766, 775 (1996). The burden is on the party challenging the Commission's findings to show that they are unsupported by the evidence. Industrial Customers, 134 Idaho at 292, 1 P.3d at 793. With regard to questions of law, the review on appeal is limited to whether the Idaho Public Utilities Commission regularly pursued its authority. Rosebud Enterprises, Inc., supra.

DISCUSSION
As his first issue on appeal, Hulet asserts that the Commission erred in finding that Idaho Power could orally contradict the plain meaning of the written RFP, specifically Section 4.2. Hulet maintains that the representation made to him by Mike Liechty of Idaho Power that Section 4.2 did not apply to past due balances is not consistent with the clear language of the section's last sentence, which provides that "Idaho Power will deduct from any payment to Bidder any balance owing to Idaho Power which is in arrears." Insisting that Section 4.2 does not contain any prohibition to the application of program payments to a customer's past due arrearages, Hulet argues that the Commission erroneously interpreted Section 4.2 to mean something other than what it says.
Clearly, the payment provisions contained in Section 4 of the RFP presuppose the existence of an agreement between Idaho Power and a Bidder. Section 4.1 provides: "The agreement between Idaho Power and *501 the Bidder will run from the date that Idaho Power accepts Bidder's offer until November 30, 2001." Section 4.2 provides as follows:
The basis for the payment to Bidders will be the difference between the annual Base Consumption Amount and the annual Actual Energy Consumption Amount. Idaho Power will pay Bidder monthly for the portion of the Offered Energy Reduction actually provided during that month. For each month in which Bidder actually reduces its energy consumption from the monthly Base Energy Consumption Amount by at least 95% of the OER for the equivalent calendar month, Idaho Power will multiply the reduction amount by the accepted offer price and pay Bidder 75% of that amount. The remaining 25% balance will be retained by Idaho Power and paid to Bidder prior to November 30, 2001, after confirmation that the Bidder has delivered the full Offered Energy Reduction and has otherwise fully performed the Agreement between Idaho Power and the Bidder. Idaho Power will deduct from any payment to Bidder any balance owing to Idaho Power which is in arrears.
The Commission concluded that the payments provided by Section 4.2 of the RFP were intended to apply only to arrearages, to the extent there were any, from the current year. The Commission relied on the Company's witnesses who testified that Section 4.2 only applied to customers whose offers were accepted and who met the criteria for receiving payments from Idaho Power for the energy reductions provided. The witnesses also testified that unpaid accounts would have to be paid and any meter service points that had been disconnected because of past due balances would have to be reconnected, as prerequisites to the acceptance of any bids. Maggie Brilz of Idaho Power specifically informed the Commission that a customer who was already disconnected from the network for unpaid bills was simply not consuming power, and an incentive payment to conserve was therefore unnecessary. There was also testimony that irrigators with arrearages were successful bidders, whose offers had been accepted once their past due accounts and a separate deposit to be reconnected were paid.
The Commission considered Hulet's admission that Mike Liechty had advised him prior to the deadline for bids that Section 4.2 did not apply to past due power bills but only to bills incurred during the 2001 irrigation season. The Commission rejected Hulet's interpretation of Section 4.2 that he could deduct past due balances owed to Idaho Power for prior years from the payments he would receive by participating in the Irrigation Buy-Back Program. The Commission also dismissed Hulet's contention that Liechty misrepresented the content of Section 4.2, such that Hulet failed to submit a bid. Because Hulet never was a bidder, he was not a program participant or entitled under any agreement with Idaho Power to program payments that he could use to pay his past due accounts.
As the finder of fact, the Commission need not weigh and balance the evidence presented to it, but it is free to accept certain evidence and disregard other evidence. Industrial Customers of Idaho Power v. Idaho Public Utilities Comm'n, 134 Idaho 285, 293, 1 P.3d 786, 794 (2000). The Commission is at liberty to believe or disbelieve proffered contradicted evidence, Utah Power & Light Co. v. Idaho P.U.C., 102 Idaho 282, 291, 629 P.2d 678, 687 (1981), and in this case determined the credibility issue in favor of Liechty, believing that Liechty had informed Hulet in the same manner as all other potential participants. The clear weight of the evidence supports the Commission's conclusion, and we therefore sustain the interpretation of Section 4.2 advanced by Idaho Power and affirmed by the Commission in its order, which held that payments under Section 4.2 were only applicable to arrearages accrued in 2001, the year of the Irrigation Buy-Back Program.
Hulet's second argument on appeal is that the Commission erred in finding that he should be denied the opportunity to present a late bid or to be retroactively included in the program. His arguments again rely upon his claim that he was repeatedly provided with misinformation from Mike Liechty that he could not submit a bid if he was in arrears and that his bid would not be accepted until the arrearages were paid.
*502 The Commission concluded based on the evidence before it that a reasonable person would not have believed that he was prohibited from submitting a bid into the program because he was in arrears to Idaho Power. The evidence clearly showed that customers with outstanding balances had submitted bids and were accepted upon payment of the past due amounts. Even Hulet's rebuttal witnesses, who had past due accounts with Idaho Power, testified that they had submitted timely bids and ultimately were accepted into the program upon payment of those past due accounts. Regardless of arrearages, then, the customer was required to submit a bid no later than February 28, 2001, as a prerequisite to participation in the program; and Hulet had presented no bid to Idaho Power. The Commission determined there was no basis to extend the time for Hulet to submit his bid or to find a waiver of the unambiguous deadline set forth in the RFP. Further, in foreclosing a late bid from Hulet, the Commission asserted that it was adhering to the mandate of I.C. § 61-315, which prohibits a public utility from making or granting a preference or advantage to any person and treating Hulet's bid in the same manner as it had previous requests to allow late bids or retroactive inclusion in the program. Accordingly, we conclude that substantial evidence supports the Commission's decision to bar Hulet from bidding into the program after the February 28, 2001, deadline.

CONCLUSION
The findings of the Commission, which are supported by substantial, competent evidence and properly form the basis for dismissal of Hulet's complaint, are upheld. Therefore, we affirm the order of the Commission dismissing Hulet's complaint.
Costs to Respondents; no attorney fees on appeal are awarded.
Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.