90 P.3d 889

**IDAHO POWER COMPANY,**
Applicant–Appellant,

v.

**IDAHO PUBLIC UTILITIES COMMISSION,**
Respondent.

No. 29016.

Supreme Court of Idaho,
Boise, December 2003 Term.

March 30, 2004.

Rehearing Denied May 27, 2004.

Larry D. Ripley, Boise, for appellant. Larry D. Ripley argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. John R. Hammond Jr. argued.

KIDWELL, Justice.

This is an appeal from a final Order of the Idaho Public Utilities Commission (Commission) denying Idaho Power Company's (Idaho Power) request to recover "lost revenue" from the implementation of Idaho Power's Irrigation Buy–Back Program (Program) during the 2001 growing season. Idaho Power argues Commission Order 28699 authorized the recovery of lost revenue and the Commission's subsequent order denying the recovery of lost revenue conflicts with this earlier order. Because this Court finds Order 28699 did authorize the recovery of lost revenue, the Order of the Commission denying Idaho Power recovery of lost revenue is vacated and remanded.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the latter of a two-case proceeding before the Commission. The first case (IPC–E–01–03) started on February 7, 2001, when Idaho Power submitted a formal application to the Commission requesting permission to implement an energy conservation program called the Irrigation Buy–Back Program (Program). The Program offered monetary incentives in the form of payments to its large irrigation customers to encourage them to reduce their electrical demand and associated consumption of energy during the 2001 growing season. The Program was in response to the "current projections of below-normal streamflows in the Snake River and its tributaries, coupled with the volatile wholesale energy market in the Western United States." Idaho Power believed these factors created a situation where it would be more cost-effective for Idaho Power to undertake the Program. Because the Program would result in Idaho Power expending large sums (hereinafter "direct costs") in payments to eligible customers and foregoing substantial amounts in revenue (hereinafter "lost revenue"), Idaho Power sought an Order of the Commission that would permit Idaho Power to treat "payments to customers and lost revenue associated with the Program as purchased power expenses eligible for recovery in retail rates by passing them through the Company's Power Cost Adjustment ("PCA") mechanism."

On February 20, 2001, the Commission issued Order 28647 approving Idaho Power's application for the sole purpose of authorizing Idaho Power to solicit competitive bids from its irrigation customers to reduce their energy consumption during the 2001 growing season. The Commission also noted in its "findings" that Idaho Power remarks that its willingness to proceed with the Program was "dependent upon Commission assurances" that Idaho Power would be able to recover through its PCA mechanism direct costs and lost revenue resulting from the Program. The Order also required Idaho Power to seek future authorization before proceeding further with the Program. Future authorization had to be obtained on or before March 9, 2001.

On February 27 and 28, 2001, Astaris LLC, the Land and Water Fund of the Rockies, the Industrial Customers of Idaho Power Company (ICIP), the J.R. Simplot Company, and Jeffrey C. Brooks filed written comments in response to Idaho Power's Program and their request to recover expenses resulting from the Program. The majority of the commentators supported the implementation of the Program, but not all were in agreement regarding the recovery of lost revenue.

On March 5, 2001, the Commission scheduled a public hearing for March 13, 2001, to review whether Idaho Power's Program should continue, and to receive testimony and comments regarding lost revenue, the cost-effectiveness of the Program, and any other concerns of interested persons or parties.

On March 7, 2001, in compliance with Commission Order 28647, Idaho Power submitted its request for authority to accept bids from irrigators in the Program. In its submission to the Commission, Idaho Power also reiterated its concern regarding its ability to recover "lost revenue." On March 12, 2001, the Commission's Staff and the Farm Development Corporation filed comments pertaining to Idaho Power's request for the recovery of lost revenue from the Program. On March 13, 2001, the Commission held its

public hearing and took the testimony of four intervenors and several members of the public regarding Idaho Power's Program and issues regarding the recovery of costs and lost revenue.

On March 14, 2001, the Commission entered Interlocutory Order 28676, which approved Idaho Power's request to implement the Program. The Order acknowledged that Idaho Power voluntarily proposed and entered into the Program and stated that Idaho Power "may" treat the revenue impacts of the Program as a purchased power expense in the Company's PCA mechanism.

On March 25, 2001, the Commission issued Order 28699. This Order summarized many of the comments provided by interested parties and reviewed the procedural history up to that point in the proceedings, which included Idaho Power's concern regarding the recovery of lost revenue, the voluntary nature of the Program, and the manner in which direct costs and lost revenue of the Program were to be treated in the PCA mechanism. The Order also required Idaho Power to develop and present a proposal to the Commission recommending a procedure to calculate the appropriate amount of lost revenues that should be passed through the Company's PCA mechanism prior to actual recovery in rates.

On October 18, 2001, Idaho Power filed its application seeking an order of the Commission "approving the costs to be included in the 2002/03 Power Cost Adjustment year" for the Program. The application was docketed as Case No. IPC–E–01–34, the second part of the two-case proceeding before the Commission.

On November 30, 2001, the Idaho Irrigation Pumpers Association and the Commission's staff filed written comments in response to Idaho Power's application for a Commission order approving the costs from the Program. Both parties concluded Idaho Power should be able to recoup a portion of its lost revenues. However, many written comments received from the public indicated they did not think Idaho Power should recover its lost revenue from the Program. On December 28, 2001, Idaho Power filed a response to the public, Commission staff and

Irrigation Pumpers Association's comments regarding, *inter alia,* Idaho Power's request for lost revenues. On April 15, 2002, the Commission issued Order 28992, which authorized Idaho Power to include the direct costs it accrued through the Program into the 2002/03 PCA year. However, the Commission denied Idaho Power's request for recovery of its lost revenue alleged to have been incurred by Idaho Power through the Program.

On May 2, 2002, Idaho Power filed a timely Petition for Reconsideration. Idaho Power requested the Commission reconsider its denial of the recovery of lost revenue from the Program. On May 30, 2002, the Commission, for the limited purpose of ensuring that it had adequate time to review the entire record in this matter, granted Idaho Power's Petition. On August 29, the Commission issued Order 29103, which reaffirmed the Commission's denial of lost revenue in accordance with Order 28992. Idaho Power appealed to this Court.

## II.

## STANDARD OF REVIEW

The Idaho Constitution provides that the Idaho Supreme Court shall have jurisdiction to review on appeal any order of the Idaho Public Utilities Commission. IDAHO CONST. art. V, § 9; *Indus. Customers of Idaho Power v. Idaho PUC,* 134 Idaho 285, 288, 1 P.3d 786, 789 (2000). The scope of this Court's review is limited and defined by I.C. § 61–629 which provides, in relevant part:

No new or additional evidence may be introduced in the Supreme Court, but the appeal shall be heard on the record of the commission as certified by it. The review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho.

I.C. § 61–629. *Hulet v. Idaho PUC,* 138 Idaho 476, 478, 65 P.3d 498, 500 (2003); *In-*

*dus. Customers,* 134 Idaho at 288, 1 P.3d at 789.

## III.

## ANALYSIS

### A. Commission Order 28699 Authorized Idaho Power To Recover Reduced/Lost Revenue From The Irrigation Buy–Back Program.

On appeal, Idaho Power argues the language used in Commission Order 28699 authorized the recovery of reduced/lost revenues from the Program. Specifically, Idaho Power argues the use of the word "may" in Order 28699 authorized Idaho Power to recover reduced/lost revenue from the Program. Idaho Power focuses on the Commission's use of the word "may" as used in the "Commission Findings" and "Order" portion of Order 28699. The "Commission Findings" portion of Order 28699 reads, in relevant part:

> The Commission further finds that the direct costs and lost revenue impacts of this Program *may* be treated as a purchased power expense in the Company's Power Cost Adjustment ("PCA") mechanism. Idaho Power and the parties shall develop and present a proposal to the Commission recommending a procedure to calculate the amount of revenue impact that should be passed through the Company's PCA mechanism. (emphasis added).

The Commission's "Order" section from Order 28699 reads, in relevant part:

> IT IS FURTHER ORDERED that the direct costs and lost revenue impacts of this Program *may* be treated as a purchased power expense in the Power Cost Adjustment. The Commission also finds that Idaho Power and the parties shall develop and present a proposal to the Commission recommending a procedure to calculate the appropriate amount of lost revenue that should be passed through the Company's Power Cost Adjustment mechanism prior to actual recovery in rates. (emphasis added).

> IT IS FURTHER ORDERED that Idaho Power record the purchase cost paid to irrigators and any calculated lost revenue

in separate Purchased Power subaccounts. The separate subaccount detail with all supporting documentation should be such that the costs for the buy-back program and any lost revenue amounts will be easily identified for audit. The PCA filing should also include a separate line to identify these costs.

It has been uniformly held that words denote their ordinary meaning unless a different intent is clearly indicated. *Intermountain Health Care, Inc. v. Bd. of Comm'ns of Blaine County,* 109 Idaho 412, 414, 707 P.2d 1051, 1053 (1985). In construing the meaning of a document, this Court looks first to the document itself. *See Storrer v. Russo,* 123 Idaho 442, 444, 849 P.2d 115, 117 (Ct.App.1991).

We determine from Order 28699 that the Commission made a policy decision to include lost revenue in the PCA. As used here, a reasonable reading of "may" shows the Commission's intent to allow Idaho Power to include lost revenue in the PCA. Normally, "may" denotes permissibility. Therefore, Idaho Power may get lost revenues if Idaho Power seeks them.

Additionally, the record shows Idaho Power relied on the Commission's decision when it entered into this Program. Indeed, one of the key concerns of Idaho Power prior to entering into the Program was whether they could recover their lost revenue through the PCA once the Program ended. To this, the Commission responded in Order 28699 that "the direct costs and lost revenue impacts of this Program *may* be treated as a purchased power expense in the Power Cost Adjustment." (emphasis added). The only question left to be resolved at the end of the Program was a determination of how those lost revenues would be computed. Commission Order 28992, which later denied the recovery of lost revenue to Idaho Power, and Commission Order 29103, which reaffirmed Order 28992, are inconsistent with the Commission's earlier policy decision in Order 28699 allowing lost revenue to be included in the PCA for this specific Program.

Therefore, based on the record before this Court, a reasonable reading of Commission

Order 28699 is that the recovery of re-duced/lost revenues would be part of the PCA and, thus, recoverable to an extent to be determined at the conclusion of the Pro-gram.

### B. Whether The Commission Has The Authority To Authorize Demand–Side Management Programs Is A Broad Public Policy Issue That Lies Beyond The Scope Of This Appeal.

On appeal, Idaho Power argues the Idaho Public Utilities Commission (PUC) does not have the authority to require the institution of demand-side management (DSM) pro-grams like the Irrigation Buy–Back Pro-gram. This Court need not address whether the PUC has the authority to require DSM programs because it is a broad public policy issue and is beyond the scope of issues raised on appeal.

### IV.

### CONCLUSION

The Order of the Commission denying Ida-ho Power recovery of lost revenue is vacated and remanded. A reasonable reading of Commission Order 28699 is that lost revenue would be included in the PCA. The PUC's authority to require DSM programs is a broad public policy issue and beyond the scope of issues raised on appeal. Costs to Appellants.

Justices SCHROEDER, EISMANN, and BURDICK concur.

Chief Justice TROUT, dissenting:

As established by statute and case law, the power of this Court to review decisions of the Public Utilities Commission is limited to "whether the Commission regularly pursued its authority and whether the constitutional rights of the appellant have been violated by the Commission's action." *A.W. Brown Co., Inc. v. Idaho Power Co.,* 121 Idaho 812, 815, 828 P.2d 841, 844 (1992). This pursuit of authority is valid so long as the PUC "has not abused or exceeded its authority or made findings unsupported by substantial evidence or improperly employed its own methods of

rate determination." *Intermountain Gas Co. v. Idaho Public Utilities Comm'n,* 97 Idaho 113, 127, 540 P.2d 775, 789 (1975).

I dissent from the Court's opinion because I believe it is the duty of the PUC, not this Court, to determine what the PUC meant in its first order. Though Idaho Power strong-ly argues that the PUC ultimately misstated its intent in its first order when it stated that Idaho Power "may" treat the lost revenue as a purchased power expense in the Power Cost Adjustment, I do not believe it is the responsibility of this Court to determine what the PUC meant when it said "may." That is a determination best left to the PUC, which made the finding in the first place.

We have held that our review of the rate-making procedures of the PUC is very limit-ed:

> Our purpose is not to analyze each step of the rate-setting process to determine whether the regulatory agency was correct in its decision, but to look at the overall effect of the rate fixed to determine wheth-er the return to the utility is reasonable and just. As the Supreme Court of the United States stated in *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944): "It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presump-tion of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its conse-quences."

*Intermountain Gas Co.,* 97 Idaho at 120, 540 P.2d at 781. As stated above, the concern of this Court is not in the details of the PUC's decision, but in the overall effect the rate-making order will have on ratepayers, and in ensuring that the effect of the order will not

be unreasonable or unjust to the utility. The PUC is required to adequately explain any decision to decline a benefit a utility requests of it. However, as long as this denial does not result in an unjust or unreasonable return to the utility, the PUC's decision must stand.

I believe the PUC clearly and adequately stated in its third order its reasons for denying Idaho Power the ability to include lost revenue in its PCA. Additionally, I believe the reasons stated by the PUC are justified and persuasive. In the best interests of ratepayers, the PUC declined to allow Idaho Power to be compensated for lost revenues because imposing the value of lost revenues on ratepayers would defeat the underlying purpose of the program. The PUC did allow Idaho Power to recover costs of the program, but in refusing to allow them to recover lost revenues, the PUC did not impose any unjust or unreasonable return to Idaho Power. Indeed, Idaho Power was seeking to recover revenues for power it would not have supplied, charging ratepayers for power that was not consumed.

The Commission explained its decision to deny Idaho Power lost revenues by stating:

In general, the Commission finds that the rates should accurately reflect the actual costs incurred to provide service. Given the unique context that caused this Program to be implemented, we find that lost revenue does not constitute an actual cost of providing service that should be born by ratepayers. To allow Idaho Power to recover lost revenue would at least partially destroy the goal of reducing overall energy costs to all ratepayers at a time when energy costs were at all time highs. To charge ratepayers for lost revenue is unreasonable in the context of the crisis that existed because of the drought and the unprecedented prices in the regional power market at that time. Requiring ratepayers to pay for energy they did not consume, but avoided due to this Program, is also unreasonable.

Order No. 29103, p. 9. Such an explanation for denying Idaho Power lost revenues is clear, persuasive and warranted. Accordingly, it is beyond the scope of review of this Court to delve into the particulars of the PUC's ratemaking process and to analyze the language of a prior order in an attempt to bind the PUC to a purported guarantee that clearly goes contrary to the PUC's mission to regulate power rates in the interest of Idaho ratepayers. "[S]o long as we determine that the order 'may reasonably be expected to maintain financial integrity (of the utility), attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests,' we will not set aside the order of the Public Utilities Commission." *Intermountain Gas Co.*, 97 Idaho at 127, 540 P.2d at 789. As cited above, "[i]f the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry ... is at an end." 97 Idaho at 120, 540 P.2d at 781.

Because I believe the PUC's order was just and reasonable to Idaho Power, I respectfully dissent.